No. 48,388

LAWRENCE E. MADDOX, individually and as representative of all that class of gas royalty owners under Gulf Oil Corporation oil and gas leases in the Hugoton-Anadarko area, *Appellee* and *Cross-Appellant,* v. THE GULF OIL CORPORATION, *Appellant* and *Cross-Appellee.*

(567 P.2d 1326)

Opinion filed July 29, 1977.

*Edwin S. Hurst,* of Tulsa, Oklahoma, argued the cause, and *James R. Yoxall,* of Liberal, was with him on the briefs of the appellant and cross-appellee.

*Gorden Penny,* of Chapin & Penny, of Medicine Lodge, argued the cause, and *W. Luke Chapin* and *Alan C. Goering,* of the same firm, and *Gary R. Hathaway,* of Ulysses, were with him on the brief for the appellee and cross-appellant.

The opinion of the court was delivered by

SCHROEDER, J.: This is a class action brought by Lawrence E. Maddox (plaintiff-appellee and cross-appellant) individually and on behalf of some 1,971 royalty owners, including those who do not reside in Kansas or have leases covering lands in Kansas or

both, against their producer, Gulf Oil Corporation (defendant-appellant and cross-appellee), for recovery of interest on "suspense royalties." The total amount of suspense royalties held from 1965 through the fall of 1972 was almost $988,000 which Gulf commingled with its other funds and used in its business operations. Except for the smaller size of the class membership, the starting of withholding in 1965, the payout by Gulf in the fall of 1972, the judgment of the trial court on January 9, 1976, and the point hereafter discussed concerning division orders, this case is identical in legal issues and factual situations to those presented in *Shutts, Executor v. Phillips Petroleum Co.,* 222 Kan. 527, 567 P.2d 1292 (No. 47,917, decided July 11, 1977). The same FPC Hugoton-Anadarko area and FPC Opinion No. 586 are involved.

More than one-half of the royalty owners signed gas division orders which expressly authorized Gulf to withhold, without interest, monies collected subject to refund until Gulf's refund obligations were finally determined or until satisfactory indemnity was furnished. It is undisputed that Gulf's refund obligations were not finally determined until FPC Opinion No. 586 became final. The trial court held the waiver of interest provision in the division orders ineffective. In its conclusion of law No. 9 the trial court ruled:

"*Division orders* and unitization orders cannot be construed to modify the lease obligations of the defendant, *being instruments reflecting royalty owners interests in proceeds from production* and unitization of acreage for allowables respectively. No consideration is reflected in these instruments which would support defendant's contention that these instruments, executed subsequent to the original leases herein, were contracts to modify the royalty provisions of said leases." (Emphasis added.)

The only testimony concerning the division orders at the time of trial was the deposition testimony of Jack Watkins (Gulf's supervisor of oil and gas records and accounting) who admitted that he had no knowledge or information as to why the paragraph concerning interest was inserted in the division orders. He further testified he knew of no consideration for the royalty owners signing these division orders, which had inserted in them the FPC suspense royalty paragraph pertaining to the waiver of interest.

These division orders were obtained by Gulf in the late 1960's and early 1970's as deaths or transfers of royalty owners occurred.

It is the contention of Gulf on appeal that the gas royalty owners who were paid under signed division orders authorizing Gulf to hold such monies, without interest, are bound by such division orders until such orders are revoked. (Citing *Phillips Petroleum Co. v. Williams,* 158 F.2d 723 [5th Cir. 1946].)

This court has said a division order is an instrument required by the purchaser of oil or gas in order that it may have a record showing to whom and in what proportions the purchase price is to be paid. Its execution is procured primarily to protect the purchaser in the matter of payment for the oil or gas, and may be considered a contract between the sellers on the one hand and the purchaser on the other. (*Wagner v. Sunray Mid-Continent Oil Co.,* 182 Kan. 81, 92, 318 P.2d 1039 and authorities cited therein.) Generally speaking, a division order is not a contract between sellers themselves, especially in view of the fact that each of the parties having an interest in production may in fact execute separate division orders. (*Wagner v. Sunray Mid-Continent Oil Co.,* supra.)

It was the duty of Gulf under the lease contracts it had with its royalty owners to market the gas at the best prices obtainable at the place where the gas was produced. The insertion in the division orders of matters contrary to the oil and gas leases, or contrary to the law, cannot be unilaterally imposed upon the lessor by the lessee or the purchaser. Here the unilateral attempt by Gulf in the division orders to amend the oil and gas leases, and thereby deprive the royalty owners of interest to which they were otherwise entitled, was without consideration. Therefore, the provisions in the division order regarding waiver of interest are null and void as determined by the trial court.

As held in *Shutts,* (1) this action was properly tried as a class action even though involving nonresident plaintiffs, (2) the producer was liable for interest on a theory of unjust enrichment and contractual principles, and (3) the class members had not waived any claim for interest. However, the computation of the award of interest by the trial court should be modified to conform to the *Shutts* case which held:

"We therefore hold on equitable principles Phillips is required to pay its royalty owners herein seven percent (7%) per annum simple interest on suspense royalties from the date of receipt of suspense royalties by Phillips until October 1, 1970 (the effective date of FPC Opinion No. 586), and eight percent (8%) simple interest per annum thereafter until the payout to the royalty owners on or about December 7,

1972. Applying the 'United States Rule' on partial payments, after the payout there was still an unpaid principal sum due equal to the total principal due plus accrued interest, less the payout. Assuming proper calculations, this amount, although principal, would equal the accrued interest on the date of the payout. From December 7, 1972, on until the date of judgment (July 29, 1976) equitable principles and Phillips' contractual undertaking require Phillips to pay its royalty owners herein eight percent (8%) per annum simple interest on the unpaid principal sum (accrued interest on date of payout) plus the unpaid principal sum; and thereafter our post-judgment interest statute, K.S.A. 16-204, requires payment of eight percent (8%) per annum simple interest for the benefit of the royalty owners on the total amount of the judgment until paid."

The judgment of the lower court is affirmed in part and modified in part, and the case is remanded for further proceedings consistent with the foregoing opinion.