No. 56,494

RICHARD WORTMAN and HAZEL MOORE, *Appellees*, v. SUN OIL COMPANY, *Appellant*.

(690 P.2d 385)

Opinion filed October 26, 1984.

*Jim H. Goering*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Gerald Sawatzky*, of the same firm, and *William C. Phelps*, of Sun Exploration and Production Company, of Dallas, Texas, were with him on the briefs for the appellant.

*W. Luke Chapin*, of Chapin & Penny, of Medicine Lodge, argued the cause, and *Ed Moore*, of Ginder & Moore, of Cherokee, Oklahoma, was with him on the brief for the appellees.

The opinion of the court was delivered by

HERD, J.: This is a class action to recover prejudgment interest on suspended gas royalties held and used by Sun Oil Company for several years. Sun appeals from the district court judgment in favor of the class.

Appellees are owners of mineral leaseholds located in Texas, Oklahoma, Louisiana, Mississippi, New Mexico and Kansas. Appellant is the lessor which produces natural gas from each appellee's leasehold. The royalty owners seek prejudgment interest on certain gas price increases received by Sun but held in suspension for a period of time.

On several occasions during the 1960's and 1970's, the Federal Power Commission (FPC) allowed Sun to charge its purchasers increased rates for the natural gas produced from appellees' leaseholds. During the pendency of the administrative proceedings and appeals involving these price increases, Sun began receiving money at the increased rates, but did not pay the increase to its royalty owners. In order to qualify for the price increases, the FPC required Sun to enter into an undertaking which required it to refund to its purchasers any price increases which were not ultimately approved. Sun then informed its royalty owners payment of the increased price would be suspended until final approval of the increases.

The principal price increases which were the basis for the current action are set out in FPC Opinions 699, 699H, 770 and 770A. Opinion No. 586, rendered in 1968, had been decided pursuant to the FPC's "area rate approach" and involved only the Hugoton-Anadarko area which consists of all of Kansas and parts of Oklahoma and Texas. In 1974, the FPC abandoned the area rate approach in Opinion No. 699. Opinions 699, 699H, 770 and 770A set "national rates." It was during the administrative and court appeals concerning these FPC increases that Sun began to receive the increased rates on which the royalty owners now claim interest.

The price increases allowed by Opinions 699 and 699H were collected by Sun from July, 1974, through April, 1976. A total of 670 properties were involved: 43.7% from Texas, 24% from Oklahoma, 22.8% from Louisiana, 3.9% from New Mexico, 3.4% from Mississippi, and 2.1% from Kansas. Nine hundred eighty-one interest holders were affected. The total suspended royalty under these opinions was $1,167,000. This amount was paid to the royalty owners in July, 1976.

The price increases allowed by opinions 770 and 770A were collected by Sun between December, 1976 and April, 1978. A total of 690 properties were involved: 40.3% from Texas, 31.6%

from Oklahoma, 23.6% from Louisiana, 3.3% from New Mexico, 0.9% from Mississippi, and 0.3% from Kansas. One thousand three hundred fifty-three interest holders were affected. The total suspended royalty under these opinions was $2,676,000. This amount was paid to the royalty owners in April, 1978.

The royalty owners' lawsuit was filed as a class action on August 30, 1979. Notice of the lawsuit was sent by first-class mail to each royalty owner. Three thousand one hundred fifty-nine notices were mailed out. One hundred five of the class members opted out.

The trial court held prejudgment interest was due from Sun to the royalty owners on the suspended gas royalties. Post-judgment interest was also awarded. Sun Oil Company appeals.

Appellant first argues Kansas law is violated by including in the plaintiff class nonresident members who do not own Kansas leases. Sun claims such a class action fails to meet the commonality prerequisite stated in *Shutts, Executor v. Phillips Petroleum Co.,* 222 Kan. 527, 557, 567 P.2d 1292 (1977), *cert. denied* 434 U.S. 1068 (1978) (*Shutts I*): "When liability is to be determined according to varying and inconsistent state laws, the common question of law or fact prerequisite of K.S.A. 60-223(a)(2) will not be fulfilled." *Shutts I,* in which the commonality requirement was fulfilled, pertained to three states and this case pertains to six states. The six states obviously present more variation in laws than the three; however, this case presents the same issues as those in *Shutts I.*

There are substantial facts supporting commonality in this suit which is brought for interest on suspended royalties. The difference between the two cases is merely the degree of Kansas ownership to the total. All members of the plaintiff class are royalty owners of Sun. Their royalties were suspended at the same time. Sun accumulated and used the suspended royalties of all the owners. Sun notified all royalty owners of suspension at the same time. Sun paid all the owners the suspended royalties at the same time. The FPC opinions regulated the rates of all the royalty owners. Sun kept its records and treated all royalty owners the same, regardless of residency.

Sun next argues the due process clause of the Fourteenth Amendment prohibits Kansas from asserting jurisdiction over nonresident class members who do not have "minimum con-

tacts" with Kansas. The basis of its argument is that the United States Constitution requires the existence of a substantial relationship between a state and any individual over which the state court seeks to assert jurisdiction. *Pennoyer v. Neff,* 95 U.S. 714, 24 L.Ed. 565 (1878). Sun further argues that since *Pennoyer,* the United States Supreme Court has insisted the state asserting jurisdiction have "minimum contacts" with the party, plaintiff or defendant. See *Internat. Shoe Co. v. Washington,* 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945), and *Shaffer v. Heitner,* 433 U.S. 186, 212, 53 L.Ed.2d 683, 97 S.Ct. 2569 (1977). Sun concludes there were no such "minimal contacts" between the nonresident plaintiffs and the State of Kansas. This issue was discussed in depth in *Shutts I.* Additionally, we held in *Shutts v. Phillips Petroleum Co.,* 235 Kan. 195, Syl. ¶ 1, 679 P.2d 1159 (1984), *aff'd in part and rev'd in part* 472 U.S. ____, 86 L.Ed.2d 628, 105 S.Ct. 2965 (1985) (*Shutts II*):

"While the essential element to establish in personam jurisdiction over non-resident defendants is some 'minimum contact' between the defendant and the forum state, the element necessary to the exercise of jurisdiction over nonresident plaintiff class members is procedural due process."

Sun contends this Kansas rule is incorrect and should be reversed.

Sun next maintains the trial court applied an improper interest rate to the suspended royalties. Pursuant to Sun's agreement with the FPC to refund to gas purchasers any accumulated amounts of unapproved price increases, Sun also agreed to an interest rate to be paid on those amounts. The trial court applied that agreed-upon rate to the suspended royalties. Sun argues the statutory prejudgment rate of interest of each state should instead be applied. The Court of Appeals held in *Gray v. Amoco Production Company,* 1 Kan. App. 2d 338, 341, 564 P.2d 579 (1977), *aff'd in part, rev'd in part* 223 Kan. 441 (1978), that the law of the forum pertaining to interest was applicable rather than the laws of the various states of residence of the plaintiffs. In *Shutts I,* 222 Kan. 527, Syl. ¶ 22, we stated:

"Where a gas producer, under circumstances described in the foregoing syllabus, files a corporate undertaking with the Federal Power Commission, wherein it *agrees* to pay 7% interest on 'FPC suspense monies' until rate proceedings are determined by the commission, and 8% thereafter on the gas purchasers' share of the 'impounded' money, in the event the commission orders a refund, equitable principles require that the royalty owners receive the same treatment as to their share . . . ."

The foregoing issues concerning commonality, due process, and improper interest are identical to those raised and decided in our previous decision in *Shutts II*, 235 Kan. 195, and are almost identical to *Sterling v. Marathon Oil Co.*, 223 Kan. 686, 576 P.2d 635 (1978); *Sterling v. The Superior Oil Co.*, 222 Kan. 737, 567 P.2d 1325 (1977), *cert. denied* 434 U.S. 1067 (1978); *Maddox v. Gulf Oil Corporation*, 222 Kan. 733, 567 P.2d 1326 (1977), *cert. denied* 434 U.S. 1065 (1978); *Shutts I*, 222 Kan. 527; *Helmley v. Ashland Oil, Inc.*, 1 Kan. App. 2d 532, 571 P.2d 345, *rev. denied* 222 Kan. 749 (1977); *Gray v. Amoco Production Company*, 1 Kan. App. 2d 338.

It is interesting to note Sun Oil Company, appellant in this case, filed an *amicus* brief in *Shutts II* in opposition to the royalty owners' position there. All three issues were thoroughly discussed and decided adverse to Sun's position in that case.

Sun's reply brief in this case was filed after the decision in *Shutts II*, giving it the full benefit of that decision. Its argument here is that *Shutts II* should be reversed. Sun presented no new matter in support of this contention other than that discussed and rejected in *Shutts II*.

We have reconsidered all of Sun's arguments on the first three issues and find no reason to reverse *Shutts II*. Thus, the issues raised justify no further discussion; we merely reaffirm our previous decisions.

The next issue raised by Sun Oil is whether a portion of appellees' claim is barred by the statute of limitations. Price increases allowed by Opinion 699 and 699H were collected by Sun from July, 1974 to April, 1976. They were paid out in July, 1976. Also in July, 1976, the FPC issued Opinion 770. Price increases from Opinion 770 and 770A were collected by Sun between December, 1976 and April, 1978, when this amount was paid. This action was filed August 30, 1979, on the theory of unjust enrichment, which is in the nature of an implied contract. Thus, the three-year statute of limitations of K.S.A. 60-512 is the period about which their argument centers. It provides:

"The following actions shall be brought within three (3) years: (1) All actions upon contracts, obligations or liabilities expressed or implied but not in writing. (2) An action upon a liability created by a statute other than a penalty or forfeiture."

Appellant contends recovery for interest on suspense royalties

paid in July, 1976, are barred by the three-year statute of limitations.

This issue was raised at trial, but the trial court made no specific ruling on it. We have held if an issue on appeal involves only a legal question arising on proven or admitted facts finally determinative of the case or if consideration is necessary to serve the ends of justice or to prevent a denial of fundamental rights, the appellate court may consider the issue even though it was not considered by the trial court. *State v. Puckett*, 230 Kan. 596, Syl. ¶ 1, 640 P.2d 1198 (1982). The issue raised by Sun of statute of limitations is a question of law. The record was uncontroverted as to when payments were made, when the opinions were issued, and when the case was filed. We conclude this is a question of law properly before this court.

The royalty owners argue the payments are not one-time transactions as contemplated by the three-year statute of limitations of K.S.A. 60-512, but rather are open accounts since each royalty owner is paid monthly for his or her share of gas produced. We defined an open account in *Spencer v. Sowers*, 118 Kan. 259, 261-62, 234 Pac. 972 (1925), as follows:

"A mutual, open, current account may be defined as an account usually and properly kept in writing, wherein are set down, by express or implied agreement of the parties concerned, a connected series of debit and credit entries of reciprocal charges and allowances, and where the parties intend that the individual items of the account shall not be considered independently but as a continuation of a related series, and that the account shall be kept open and subject to a shifting balance, as additional related entries of debits or credits are made thereto, until it shall suit the convenience of either party to settle and close the account; and where, pursuant to the original, express or implied intention, there is to be but one single and individual liability arising from such series of related and reciprocal debits and credits, which liability is to be fixed on the one party or the other as the balance shall indicate at the time of settlement or following the last pertinent entry of the account."

If an account is mutual, open and running, the statute of limitations runs on the balance of the account, thereby tolling the statute until final payment is made.

The payments made in July, 1976, by Sun, were not a part of the royalty owners' monthly payments for their share of gas produced, but were for an amount of royalty suspended for a period of time and then paid out in a lump sum to each royalty owner. Subsequent monthly royalty payments had no relationship to the July, 1976 payment or interest thereon. We hold,

therefore, the transactions between Sun and the royalty owners pertaining to interest on suspended royalty not to be a mutual, open, running account.

However, that does not dispose of this issue. We held in *Shutts I* that the "United States Rule" applies to interest on suspense royalties. The "United States Rule" provides that in applying partial payments to an interest-bearing debt which is due, in the absence of an agreement or statute to the contrary, the payment shall be first applied to the interest due, then to principal. 45 Am. Jur. 2d, Interest and Usury § 99, pp. 88-89; *Shutts I*, 222 Kan. 527; *Jones v. Nossaman*, 114 Kan. 886, 221 Pac. 271 (1923); *Christie v. Scott*, 77 Kan. 257, 94 Pac. 214 (1908). By applying the July 1976 payment under FPC Opinions 699 and 699H first to interest and then to suspended royalty, as required by the U.S. Rule, the statute of limitations issue is eliminated. The balance owed the royalty owners is royalty not interest. While interest is covered by implied contract, the payment of royalty is provided for in a written lease, which has a five-year statute of limitations pursuant to K.S.A. 60-511. This statute provides:

"The following actions shall be brought within five (5) years: (1) An action upon any agreement, contract or promise in writing."

Thus, we conclude this action is not barred by the statute of limitations.

The final issue involves the award of post-judgment interest by the court. Sun argues the granting of post-judgment interest by the trial court in this case was improper since the exact amount of the award permitted pursuant to the court's judgment was unknown at the time of the court's final decision. The court awarded interest at a set rate on each class members' accrued royalties. Thus, after the final judgment, the accrued royalties of each royalty owner had to be multiplied by the interest rate mandated by the court. This did not render the judgment so uncertain as to preclude post-judgment interest. The amount of accrued royalty for each individual and the interest rate were both known at the time of the court's judgment; to determine the exact amount owed under the court's order Sun merely had to multiply these two figures. In the other Kansas suspended royalty cases, cited previously, post-judgment interest was granted when the amounts were unknown to the same extent they are unknown in this case. This issue is without merit.

The judgment of the trial court is affirmed and the case remanded for determination of attorney fees, post-judgment interest, and entry of judgment consistent with this opinion.

HOLMES, J., not participating.