No. 59,804

RICHARD WORTMAN and HAZEL MOORE, Individually and as representatives of all producers and royalty owners to whom Sun Oil Company has made or should make payment of suspended proceeds or royalties pursuant to FPC opinions or FERC, *Appellees,* v. SUN OIL COMPANY, *Appellant.*

(755 P.2d 488)

Opinion filed March 30, 1987.

*Gerald Sawatzky,* of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause, and *Jim H. Goering,* of the same firm, was with him on the briefs for appellant.

*W. Luke Chapin,* of Chapin & Penny, of Medicine Lodge, argued the cause, and *Ed Moore,* of Ginder & Moore, of Cherokee, Oklahoma, was with him on the brief for appellees.

The opinion of the court was delivered by

HERD, J.: This is a class action filed in August of 1979 on behalf of owners of mineral leaseholds seeking to recover suspended gas royalties from Sun Oil Company. This court affirmed the district court's judgment for the plaintiff class in *Wortman v. Sun Oil Co.*, 236 Kan. 266, 690 P.2d 385 (1984). The United States Supreme Court subsequently vacated and remanded this case in light of *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2695 (1985) (*Phillips*).

While the facts in this case were set forth in some detail in our previous opinion, they will be summarized here for reference purposes.

During the 1960's and 1970's, Sun Oil Company applied to the Federal Power Commission (FPC) for gas price rate increases. While waiting for approval of such increases, Sun charged its purchasers the increased rates, but withheld the increased gas royalties from the owners of the mineral leaseholds.

In order to qualify for the price increases, the FPC required Sun to enter into an undertaking which required it to refund to its purchasers any price increases not ultimately approved together with interest at rates established by the Federal Energy Regulatory Commission (FERC) thereon. Sun then informed its royalty owners that payment of the increased price would be suspended until final approval of the rate increases.

In July of 1976, pursuant to FPC opinions 699 and 699H, Sun paid $1,167,000 in suspended royalties to owners of oil and gas leaseholds in six states: Texas, Oklahoma, Louisiana, New Mexico, Mississippi, and Kansas. This payment was a result of price increases collected by Sun between July 1974 and April 1976.

In April of 1978, pursuant to FPC opinions 770 and 770A, Sun paid suspended royalties in the amount of $2,676,000 to royalty owners with property in the six states listed. This payment resulted from price increases collected by Sun between December 1976 and April 1978.

This suit was filed on August 30, 1979, to recover prejudgment interest on the suspended gas royalties and was subsequently certified as a class action. Notice of the action was sent to 3,159 class members. Of these, 105 members "opted out" of the class, although none of the members were supplied with a request for exclusion ("opt out") form.

The district court determined prejudgment interest was due from Sun to the royalty owners and applied an interest rate derived from Sun's corporate undertaking with the FPC. (Sun had agreed to an interest rate to be paid on accumulated amounts of unapproved price increases refunded to gas purchasers.) The district court also awarded post-judgment interest. This court affirmed the district court's judgment in *Wortman v. Sun Oil Co.*, 236 Kan. 266, as to prejudgment interest.

The United States Supreme Court vacated and remanded this case in light of *Phillips*, holding that application of Kansas contract and equity law to class actions involving gas leases predominantly in other states was sufficiently arbitrary and unfair as to exceed constitutional limits.

On remand, the district judge concluded as follows:

"I have further examined the laws of all states involved herein and applying those laws and case authorities to the facts previously determined, I *come to the same result concerning FERC interest rates to be applied as before.* All states involved herein recognize interest rates higher than established by a general statute in cases where a contract or agreement provides a higher rate and also in cases involving equitable and moratory interest. The laws of the other states do not conflict with the laws of Kansas on the interest rate to be used.

"The interest rates to be applied herein are the FERC interest rates according to 18 CFR 154.67 *and as set forth above. The rates are 9% per annum simple* interest to September 30, 1979, (after this case was filed in August, 1979) and thereafter at bank prime rates averaged and compounded quarterly, as set forth above until date of judgment. After date of judgment, the Kansas judgment rate of 15% per annum simple interest applies." (Emphasis added.)

The district court also ruled that the Kansas five-year statute of limitations for actions on written instruments was applicable to the claims of both residents and nonresidents. Finally, the district court determined that "opt out" forms should be mailed to class members at the expense of the defendant within 15 days from the filing of the court's decision. Sun appeals from the district court's rulings.

The first issue on appeal is whether the district court improperly applied a prejudgment interest rate derived from Sun's corporate undertaking with the FPC. Sun argues that under *Phillips*, the statutory interest rate of each state in which gas leases are located must be applied.

This issue was recently addressed and resolved in *Shutts v.*

*Phillips Petroleum Co.,* 240 Kan. 764, 732 P.2d 1286 (1987) *(Shutts).* In *Shutts,* this court reviewed the law of six jurisdictions containing 97% of Phillips' nationwide leases (Texas, Oklahoma, New Mexico, Wyoming, Louisiana, and Kansas). The court concluded:

"Based upon the law of the five enumerated jurisdictions as above reviewed, and upon all of the facts, conditions, and circumstances presented by this case, we find all jurisdictions would apply equitable principles of unjust enrichment to hold Phillips liable for interest on the royalties held in suspense by Phillips as a stakeholder. Under equitable principles, the states would imply an agreement binding Phillips to pay the funds held in suspense to the royalty owners when the FPC approved the respective rate increases sought by Phillips, together with interest at the rates and in accordance with the FPC regulations found in 18 C.F.R. § 154.102 (1986) to the time of judgment herein. *These funds held by Phillips as stakeholder originated in federal law and are thoroughly permeated with interest fixed by federal law in the FPC regulations as heretofore set forth in this opinion.*" (Emphasis added.) 240 Kan. at 800 .

*Shutts* is controlling here and requires us to find the district court applied the proper prejudgment interest rate to the suspended royalties.

Also, pursuant to *Shutts,* we hold that the applicable interest after the date of the judgment, July 14, 1986, shall be the statutory rate for each state where the gas royalty is produced.

In Kansas, K.S.A. 1986 Supp. 16-204(c) sets the rate for post-judgment interest. The statutory interest rates on judgments in all states involved in this action, other than Kansas, are: Texas— 18% (Tex. Rev. Civ. Stat. Ann. art. 5069-1.05 [Vernon 1987]); Oklahoma—15% (Okla. Stat. tit. 12 § 727 [1985]); Louisiana—7% (La. Civ. Code Ann. art. 2924 [West 1987 Supp.]); New Mexico—15% (N.M. Stat. Ann. 56-8-4[1986]; Mississippi—8% (Miss. Code Ann. § 75-17-7 [1986 Supp.]).

The appellant next alleges the district court erred in failing to require that class members receive exclusion request forms prior to entry of judgment and in ordering the appellant to pay the costs of notice.

With respect to this issue, the district court held:

"Both sides are agreed that it would be desirable to mail an additional notice with an exclusion request attached in order to avoid further arguments on due process. Copy of such notice, as requested by plaintiff class, is hereto attached and is ordered mailed by defendant to all members of the class. Such mailing may

be included in the next regular monthly royalty payment disbursed by the defendants, but in no event not later than 15 days from the filing of this order. If there are members of the class not presently receiving royalty payments, on a monthly basis, or if there be members of the class who are no longer receiving royalty payments, then such notice shall be mailed by defendants within 15 days from the filing of this memorandum order."

In order for the district court to properly assert personal jurisdiction over class members whose residences and leases are not in the State of Kansas, minimal due process requirements must be satisfied. These requirements were recently set forth in *Phillips Petroleum Co. v. Shutts,* 472 U.S. at 811-12:

"If the forum State wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' [Citations omitted.] The notice should describe the action and the plaintiffs' rights in it. *Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court.* Finally, the Due Process Clause of course requires that the named plaintiff at all times adequately represent the interests of the absent class members." (Emphasis added.)

Since opt out forms were never sent to class members with the notice in this case, the district court properly determined such forms must be sent in order to meet minimal due process requirements. The appellant argues, however, that the court erred in not requiring that opt out forms be sent prior to entry of judgment and at the expense of plaintiffs rather than defendants.

Notice to class members must be sent long before the merits of the case are adjudicated. 7B Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1788 (1986). Here, while notice was sent to class members when the class was certified, it did not contain an opt out form.

Appellant cites no authority for its contention that the district court erred by not requiring opt out forms be sent prior to entry of judgment. Here, the district court had previously ruled in favor of the class and this court affirmed. While the case was ultimately remanded to the district court, members of the class were aware judgment had previously been entered for the class

and the primary remaining question was what interest rate would be applied. Under such circumstances, it was proper for the district court to require that opt out forms be sent within 15 days of entry of judgment.

This leaves the issue of whether the responsibility for sending additional notice and opt out forms was properly placed with the appellant. The district court ruled that Sun was responsible for mailing notice with the exclusion request form attached to all members of the plaintiff class. The court further held that such mailing could be included in the next regular monthly royalty payment disbursed by the defendant, but in no event later than 15 days from the filing of the order.

The case of *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974), is relevant to our analysis of this issue. In *Eisen,* a federal district court held a preliminary hearing to determine how to allocate the costs of notice to the class. At the hearing, it was determined that the plaintiff class was likely to prevail on its claim and the defendants were thus ordered to pay 90% of the costs of the action.

In reversing the district court, the Supreme Court ruled that a preliminary procedure, such as that utilized by the district court in *Eisen,* is improper as it "may result in substantial prejudice to a defendant, since of necessity it is not accompanied by the traditional rules and procedures applicable to civil trials." 417 U.S. at 178. The court further ruled that a plaintiff must bear the initial notice costs as part of the "ordinary burden of financing his own suit." 417 U.S. at 179.

Since *Eisen,* lower courts have consistently held that notice costs must be borne by the plaintiff class. 7B Wright, Miller & Kane, Federal Practice and Procedure § 1788, p. 233. However, the Supreme Court in *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 358, 57 L. Ed. 2d 253, 98 S. Ct. 2380 (1978), left the possibility open that in some cases, the cost of notice could be placed on the defendant. The court ruled:

"In those cases where a district court properly decides under Rule 23(d) that a defendant rather than the representative plaintiff should perform a task necessary to send the class notice, the question that then will arise is which party should bear the expense. On one hand, it may be argued that this should be borne by the defendant because a party ordinarily must bear the expense of complying with orders properly issued by the district court; but *Eisen IV* strongly suggests that the representative plaintiff should bear this expense because it is he who seeks to

maintain this suit as a class action. In this situation, the district court must exercise its discretion in deciding whether to leave the cost of complying with its order where it falls, on the defendant, or place it on the party that benefits, the representative plaintiff."

In the instant case, the merits of the case had already been determined against the defendant, Sun. Thus, we hold under the circumstances of this case the costs of financing the additional notice were properly placed upon the defendant.

Sun next contends the district court erred in applying the Kansas five-year statute of limitations to the claims of nonresident class members insofar as those claims arose out of the 1976 payment of suspense royalties. Sun argues the United States Supreme Court's holding in *Phillips* requires this court to apply the statutes of limitations of each of the states in which the claim arose.

First, it should be noted that, in *Phillips,* the Supreme Court was concerned with the *substantive* conflict between Kansas law and the laws of the states in which the gas leaseholds were located. That substantive conflict related to the interest to be applied to royalty payments—an issue already resolved by this court.

Generally, limitation statutes are considered as being remedial or procedural in their application, and do not affect the substantive rights of the litigants. 51 Am. Jur. 2d, Limitation of Actions § 21, p. 605. Accordingly, we hold that *Phillips* does not require application of the various states' statutes of limitations.

Sun Oil further argues that K.S.A. 60-516 requires the application of the statutes of limitation of the states in which the individual royalty owners reside. That statute provides that when a cause of action has arisen in another state and by the laws of that state a cause of action cannot be maintained because of lapse of time, no action can be maintained thereon in this state. We hold K.S.A. 60-516 is inapplicable here because it applies only where the cause of action has arisen in another state. Here, the cause of action arose in Kansas as well as in Texas, Oklahoma, Louisiana, New Mexico, and Mississippi.

We conclude the district court did not err in applying the Kansas five-year statute of limitations to the claims of nonresident class members.

The judgment of the district court is affirmed in part and reversed in part.

HOLMES, J., not participating.