67 F.3d 312
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Martha BARNHARDT; Mary R. Clawson; Cynthia Saunders; John
A. Collingwood; and Martha Barnhardt, as Executor
of the Last Will and Testament of Edna
E. Collingwood, deceased,
Plaintiffs-Appellants,
v.
OXY USA, INC., a corporation, Defendant-Third-Party Plaintiff/Appellee,
v.
Inez THURSTON and R. Burton Hall, Third-Party Defendants/ Appellees.
 No. 94-3363.
 United States Court of Appeals, Tenth Circuit.
 Oct. 5, 1995.
 
 ORDER AND JUDGMENT[1]
 Before MOORE, ANDERSON, and BALDOCK, Circuit Judges.
 
 
 1
 This is an appeal from an order granting summary judgment for the defendant in plaintiffs' diversity action involving a dispute over royalty proceeds from oil and gas wells in the State of Kansas. The district court held the action was barred by equitable estoppel. We agree and affirm.
 
 
 2
 Plaintiffs are or represent the heirs of Edna and Alfred Collingwood, who owned oil producing property in Haskell County, Kansas. In 1942, the Collingwoods entered into a lease with Cities Service Oil Company, which operated wells and sold the resulting oil and gas. Defendant, Oxy USA, Inc., succeeded to Cities Service's rights and obligations by assignment. Plaintiffs succeeded to the Collingwoods' interests through their estate. Inez Thurston and Burton Hall, although not parties to this appeal, are the owners of adjacent oil producing property.
 
 
 3
 Because the facts surrounding the oil and gas royalties are lengthy, we synthesize them to facilitate understanding of the issues. Although the Collingwood property produces both oil and gas, the dispute in this case is over the oil royalties only. Those royalties are payable under the lease according to a formula which, for the sake of brevity, we denominate "the unconsolidated formula."
 
 
 4
 In 1946, Cities Service sent the Collingwoods a "gas consolidation agreement" which made gas royalties payable according to a different formula we will denominate "the consolidated formula." This agreement allowed Cities Service to consolidate the Collingwoods' property with the Halls' to fix the amount of gas royalties to be paid to both property owners.
 
 
 5
 Cities Service then drilled ten wells on the property. Most of the wells produced gas, some produced oil, and some produced nothing.
 
 
 6
 This appeal concerns events that began in 1961. At that time, Cities Service began paying the oil royalties according to the consolidated formula. This formula is less favorable to the Collingwoods than the unconsolidated formula, and more favorable to the Halls. As we understand the consolidated formula, it pays royalties for all gas on the Hall and Collingwood land pro rata based on each owner's acreage. The unconsolidated formula, however, apparently pays royalties based on the wells actually residing on the Hall or Collingwood land, without consolidation. Thus, consolidation would tend to favor the Halls when the wells were actually located on the Collingwoods' land. It is undisputed application of the consolidated formula caused plaintiffs to be underpaid and the Halls to be overpaid.
 
 
 7
 About one year after Cities Service began paying the royalties according to the consolidated formula, it prepared division orders memorializing the erroneous scheme. A commonly used document in the industry, a division order, is "an instrument required by the purchaser of oil or gas in order that it may have a record showing to whom and in what proportions the purchase price is to be paid." Wagner v. Sunray Mid-Continent Oil Co, 318 P.2d 1039, 1047 (Kan.1957).
 
 
 8
 The division orders were sent to Edna Collingwood, who by that time was widowed and was handling her husband's estate. The letter of transmittal stated:
 
 
 9
 Several years ago ... you ... executed our royalty gas division order covering your ... interests in the subject unit. We have since re-drafted our form of division and transfer orders. In reviewing this particular file, it has come to our attention that our present division order now in effect has no provision to cover the sale of liquids being produced from this property. As your records will disclose, you are being paid for gas, oil, and/or condensate.
 
 Mrs. Collingwood wrote back:
 
 10
 I also note that all of these division orders are for both gas and oil, but section 5-29-34, lease 1536294-001 is the only one on which both gas and oil are produced that you have not prepared a separate division order for each product. I do not know why this distinction is made.
 
 
 11
 Cities Service responded to other queries in her letter, but did not answer her question about the oil and gas leases being covered under one division order. Nevertheless, Mrs. Collingwood executed and returned the division orders.
 
 
 12
 Cities Service, and then Oxy, when it succeeded to Cities Service's interests, continued to make payments according to the consolidated formula until 1992. In 1992, when plaintiffs informed Oxy of the error, Oxy cancelled the erroneous division orders and began paying royalties under the unconsolidated formula.
 
 
 13
 Plaintiffs filed this suit in Kansas state court, and defendants removed it to federal court under diversity jurisdiction.[2] Oxy then moved for summary judgment on the basis of estoppel and statute of limitations. The district court granted the motion based on estoppel and did not reach the statute of limitations issue. Plaintiffs appealed.
 
 
 14
 Summary judgment should be affirmed where, taking the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Deepwater Invs., Ltd. v. Jackson Hole Ski Corp., 938 F.2d 1105, 1110 (10th Cir.1991); Russillo v. Scarborough, 935 F.2d 1167, 1170 (10th Cir.1991). We review the grant of a motion for summary judgment de novo. Bacchus Indus., Inc. v. Arvin Indus., Inc., 939 F.2d 887 (10th Cir.1991). However, "application of equitable doctrines rests in the sound discretion of the district court." McKinney v. Gannett Co., 817 F.2d 659, 670 (10th Cir.1987).
 
 
 15
 Our analysis must begin with the clarification that this is a contract case. Reduced to its fundamental terms, the claims are that plaintiffs had a lease with Oxy, Oxy breached the terms of the lease when it underpaid the royalties, and plaintiffs have a right to damages in the amount of the underpaid royalties. The issue here is whether that recovery is barred by a defense.
 
 
 16
 The parties appear to agree there is no contract superseding the lease or the division orders. Yet, the district court stated division orders are enforceable only as agreements between buyer and seller, and not as agreements between sellers. Therefore, any rights the plaintiffs might have in relation to the Halls could not be modified by an agreement entered into only by Oxy and the plaintiffs. In fact, the district court order states Oxy has conceded the division orders are not enforceable agreements.[3]
 
 
 17
 The district court predicated its judgment upon the equitable doctrine of estoppel. That doctrine is employed against recovery on a contract claim, arising from "the effect of the voluntary conduct of a party that precludes that party, both at law and in equity, from asserting rights against another who relies on such conduct." Tucker v. Hugoton Energy Corp., 855 P.2d 929, 936 (Kan.1993). Equitable estoppel requires that "the acts, representations, admissions, or silence of another party (when it had a duty to speak) induced the first party to believe certain facts existed." Id. The district court here held plaintiffs were estopped from making their claims based on the division orders.
 
 
 18
 Because estoppel is an equitable defense, the contours of the defense are not clear cut. The court may apply the defense or not, depending on the equities of each case.
 
 
 19
 We note preliminarily our examination of the record leads us to dispense with notions about Edna Collingwood's being naive or vulnerable as a distraught widow--notions hinted at in plaintiffs' argument. As the district court noted, Edna Collingwood managed her husband's multimillion dollar estate and "ran the family business, Collingwood Grain, a multimillion dollar company." Moreover, plaintiffs' suggestion that Mrs. Collingwood's naivete or widowhood invoked some sort of duty, pursuant to the implied covenant of good faith and fair dealing, on the part of Oxy is without merit. The issue here is whether, by signing the division orders, Mrs. Collingwood caused Cities Service/Oxy to rely on the royalty rate embodied in them.
 
 
 20
 Plaintiffs have pled no facts showing Cities Service's actions in promulgating the new division orders were anything but a mistake. They assert Cities Service promulgated the new orders to cover up their previous error and avoid "double liability" for making erroneous royalty payments. However, there are no facts alleged to support this. Thus, what we have here is a mistake by one party, and a confirmation of the mistake by the other party.
 
 
 21
 Moreover, although there are no facts suggesting Cities Service knew the division orders were wrong, there is evidence Mrs. Collingwood did. She asked Cities Service to explain why there were not separate division orders for oil and gas. Then, when Cities Service failed to respond, she dropped the issue. Even though neither party was particularly at fault here, Mrs. Collingwood was in the best position to discover the error.
 
 
 22
 There are Kansas cases which illuminate the issue of estoppel via division orders: Fast v. Fast, 496 P.2d 171 (Kan., 1972); Wagner, 318 P.2d at 1039; and Maddox v. Gulf Oil Corp., 567 P.2d 1326 (Kan.1977), cert. denied, 434 U.S. 1065 (1978).
 
 
 23
 Wagner is inapposite because there defendants asserted estoppel when plaintiffs had executed a division order, but claimed the underlying lease was invalid. In Wagner, plaintiffs were party to two consistent agreements--the lease and the division orders. Here, the agreements are inconsistent.
 
 
 24
 In contrast, Fast involved an owner who signed a division order that failed to redirect royalties for a one-twelfth interest in a lease that he had conveyed to another party. The court held there was no estoppel, but it stated:
 
 
 25
 In Wagner we held that the signing of a division order might estop the signer vis-a-vis the oil company, but worked no estoppel as against rival claimants to the mineral interest, saying "rather than reliance by the defendants to their detriment, plaintiffs' signing of the division orders in fact gave them a benefit to which they were not entitled."
 
 
 26
 496 P.2d at 175 (quoting Wagner, 318 P.2d at 1039).
 
 
 27
 In Maddox, royalty owners filed a class action against Gulf Oil to recover interest on "suspense royalties" which Gulf had commingled with its other funds. The royalty owners had signed division orders authorizing Gulf to withhold the money without interest. The court rejected Gulf's estoppel argument.
 
 
 28
 In its order granting summary judgment, the district court reconciled Maddox and Fast based on whether the defendant benefited from its actions. It held Oxy did not benefit from the erroneous payments, having paid the excess royalties to the Halls.
 
 
 29
 The district court expressed its decision as if it had decided the matter solely on whether Oxy received a benefit from the order. Although not completely dispositive, whether the defendant benefitted from the error is a perfectly legitimate factor to consider in a question of equity. The lack of benefit to Oxy could be simply the deciding factor in the equity analysis.
 
 
 30
 Nevertheless, we cannot conclude the court abused its discretion when it applied the defense of equitable estoppel. Although an exhaustive search of the cases would reveal contrary authority,[4] it is not binding; and because of the equitable parameters of an equitable issue, no precedent is binding, except perhaps in the unlikely case of identical facts.
 
 
 31
 Moreover, we see no other purpose for a division order except to estop a contrary claim for royalties. This seems to be its chief use in the industry, and both parties should have known that.
 
 
 32
 Given the district court did not abuse its discretion in applying the equitable defense, the issue remains whether the defense should have been decided on summary judgment. Equity is a subject for the court, not a jury. It may be persuasively argued the court should have allowed the parties to proceed to a bench trial or made findings of fact, rather than deciding the issue as a matter of law. However, a remand for fact finding in this case is unnecessary. The district court had the facts to determine the estoppel issue at its command. The court's decision to apply equitable estoppel is not error, and a remand would be needlessly redundant.
 
 
 33
 Plaintiffs have contended the actions of Oxy constitute "constructive fraud." As a basis for its ruling on this issue, the district court rejected plaintiffs' contention Cities Service had superior knowledge. Lynn v. Taylor, 642 P.2d 131 (Kan.App.1982) (superior knowledge plus silence implies fraud). Although plaintiffs devote a great deal of their argument to this issue, it is moot given the district court's determination the claim was not set forth with particularity in the complaint.[5]
 
 
 34
 The overwhelming fact is that plaintiffs never pled a cause of action for fraud.[6] The district court states plaintiffs raised the issue for the first time in response to Oxy's motion for summary judgment. The court further noted Fed.R.Civ.P. 9(b) mandates a party to plead the misrepresentations giving rise to fraud with particularity. Fed.R.Civ.P. 9(b).[7] We agree with this analysis. The judgment of the district court is AFFIRMED.
 
 
 
 [1]
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470
 
 
 [2]
 Oxy filed a third party complaint against the Halls
 
 
 [3]
 Plaintiffs have claimed fraud, apparently as a defense to the enforcement of the division orders. But Oxy's concession of the unenforceability of the division orders makes this argument specious
 
 
 [4]
 See, for example, Shaw v. Northwest Truck Repair, Inc., 541 P.2d 1277 (Ore.1975); Wachovia Bank & Trust Co. v. Rubish, 293 S.E.2d 749 (N.C.1982); R.A.S., Inc. v. Crowley, 351 N.W.2d 414 (Neb.1984)
 
 
 [5]
 Plaintiffs also argue at length that one gas well was reclassified to an oil well, and only Cities Service, not the Collingwoods, knew this. This reclassification may have changed the amount of royalties due the plaintiffs, but it is not relevant to the issue of whether either party knew a mistake had been made on the division orders
 
 
 [6]
 The original petition (complaint) has four counts: (1) action for accounting, (2) mutual mistake, (3) conversion, and (4) breach of contract
 
 
 [7]
 The district court noted this is also a requirement of Kansas law, Kan. Stat. Ann. 60-209. Of course, Kansas pleading requirements would not control in federal court, but the court was probably concerned with whether plaintiffs made a fraud claim in the original state suit. They did not