No. 90,039

AUDIE DRAGON and JOHN HOWARD, For Themselves and All Others Similarly Situated, *Appellees,* v. VANGUARD INDUSTRIES, INC., VANGUARD PIPING SYSTEMS, INC., and VANGUARD PLASTICS, INC., *Appellants.*

(89 P.3d 908)

Opinion filed May 14, 2004.

*Casey R. Law,* of Bremyer & Wise, L.L.C., of McPherson, argued the cause and was on the briefs for the appellants Vanguard Industries, Inc. and Vanguard Piping Systems, Inc.

*William H. Seiler, Jr.,* of McPherson, argued the cause and was on the briefs for the appellant Vanguard Plastics, Inc.

*Rex A. Sharp,* of Gunderson, Sharp & Walke, P.C., of Prairie Village, argued the cause, and *Isaac L. Diel* and *Todd R. Seelman,* of Diel & Seelman, P.C., of Prairie Village, and *David B. Cohen,* of Scarsdale, New York, were with him on the brief for the appellees.

The opinion was delivered by

LUCKERT, J.: Plaintiffs Audie Dragon and John Howard are Georgia residents who filed suit on behalf of themselves and a nationwide class of property owners whose property contains polybutylene pipe manufactured from Mitsui resin. Plaintiffs allege this defective product, known as M pipe, was designed, manufactured, advertised, or sold by defendants.

The district court granted plaintiffs' motion for nationwide class certification and defined the class as: "All persons and entities that own real property or structures and/or improvements to real property in the United States in which there was installed between January 1, 1990, and the present Vanguard polybutylene plumbing containing resin manufactured by Mitsui Plastics, Inc." After denying a motion for reconsideration, the trial court amended its prior order to include the findings required before a request for interlocutory appeal may be made. See K.S.A. 60-2102(b). The Court of Appeals granted the defendants' application for permission to take an interlocutory appeal. This court denied plaintiffs' petition for review of that decision and transferred the appeal to this court on the court's own motion pursuant to K.S.A. 20-3018(c).

The defendants allege that the district court abused its discretion in finding that the prerequisites established by K.S.A. 2003 Supp. 60-223 were satisfied. More specifically, defendants allege that the trial court erred in not fully considering disputes regarding facts relevant to the statutory prerequisites and choice-of-law problems. The defendants also allege that the district court erred in relying on non-Kansas cases where other courts had certified class actions in which plaintiffs sought damages from manufacturers of defective polybutylene pipe made with a resin other than the Mitsui resin which is alleged to be a component of the defective product at issue in this case.

We find that the trial court failed to fully determine factual issues relating to the prerequisites for class certification and to rigorously analyze the requirements of commonality, typicality, predominance, and superiority. We reverse and remand for further proceedings on the issue of whether the requested class should be certified.

K.S.A. 2003 Supp. 60-223 governs class actions. This provision is patterned after Fed. R. Civ. Proc. 23, although it is not identical, and this court has traditionally followed the federal courts' interpretation of the federal rule. *Steele v. Security Benefit Life Ins. Co.*, 226 Kan. 631, 636, 602 P.2d 1305 (1979).

The federal rule was amended in 2003, and its Kansas counterpart in 2004, while this case was on appeal. The amendments to K.S.A. 2003 Supp. 60-223 are not yet effective (2004 House Bill No. 2764); therefore, the pre-amendment version of the statute governs this analysis.

K.S.A. 2003 Supp. 60-223(a), like its federal counterpart, imposes four requirements applicable to all class actions:

"(a) *Prerequisites to a class action.* One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." K.S.A. 2003 Supp. 60-223(a).

In abbreviated form, these threshold elements require: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

In addition to satisfying these four prerequisites, parties seeking class certification must show that the action is maintainable under K.S.A. 2003 Supp. 60-223(b)(1), (2), or (3). Plaintiffs in this case seek certification under K.S.A. 2003 Supp. 60-223(b)(3). This provision adds two additional prerequisites: common questions of law or fact must "predominate over any questions affecting only individual members" and class resolution must be "superior to other available methods for the fair and efficient adjudication of the controversy." K.S.A. 2003 Supp. 60-223(b)(3) includes a list of factors pertinent to a court's examination of the predominance and superiority requirements:

"(A) The interest of members of the class in prosecuting or defending separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against members of the class; (C) the appropriate place for

maintaining, and the procedural measures which may be needed in conducting, a class action." K.S.A. 2003 Supp. 60-223(b)(3).

The trial court made specific findings that each of the prerequisites of K.S.A. 2003 Supp. 60-223(a) and (b)(3) had been met. Regarding the four prerequisites of K.S.A. 2003 Supp. 60-223(a), defendants focus upon the trial court's findings that commonality and typicality were met. Defendants also challenge the trial court's findings that the prerequisites of K.S.A. 2003 Supp. 60-223(b)(3), predominance and superiority, were met. Many of the prerequisites overlap, as do defendants' arguments. Intertwined with all of the defendants' arguments is the contention that the trial court erred in failing to fully consider and resolve factual questions regarding class issues before the court certified the class.

### Standard of Review

"Trial judges are afforded substantial discretion in determining whether a class should be certified." *Bigs v. City of Wichita*, 271 Kan. 455, 477, 23 P.3d 855 (2001). As we noted in *Saucedo v. Winger*, 252 Kan. 718, 730-32, 850 P.2d 908 (1993), " 'the amount and degree of judicial discretion will vary depending on the character of the question presented for determination.' " 252 Kan. at 731 (quoting Wallach, *Judicial Discretion: How Much*, in Judicial Discretion 12 [Smithburn 1991]). In general, when a discretionary decision is made "within the legal standards and takes the proper factors into account in the proper way, the [trial court's] decision is protected even if not wise." Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. App. Prac. & Process 47, 59 (2000). However, "[a]buse is found when the trial court has gone outside the framework of legal standards or statutory limitations, or when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination." 2 J. App. Prac. & Process at 59. See Friendly, *Indiscretion about Discretion*, 31 Emory L.J. 747, 763 (1982); Rosenberg, *Judicial Discretion of the Trial Court, Viewed from Above*, 22 Syracuse L. Rev. 635 (1971); Schroeder, *Appellate Justice Today: Fairness or Formulas*, Wis. L. Rev. 9, 24 (1994).

Applying these principles in the context of the discretionary decision to certify a class, the United States Supreme Court has explained "this discretion is not unlimited, and indeed is bounded by the relevant provisions of the . . . Rules." *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 68 L. Ed. 2d 693, 101 S. Ct. 2193 (1981). In another case, the Court explained its reversal of the discretionary decision: "We do not, of course, judge the propriety of a class certification by hindsight. The District Court's error in this case . . . is the failure to evaluate carefully the legitimacy of the named plaintiff's plea . . . ." A class should be certified only *"after a rigorous analysis,* that the prerequisites of Rule 23(a) have been satisfied." (Emphasis added.) *General Telephone Co. of Southwest v. Falcon,* 457 U.S. 147, 160-61, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982).

While the trial court has substantial discretion in determining whether a class should be certified, the provisions of K.S.A. 2003 Supp. 60-223 must be applied and rigorously analyzed.

### Did the Trial Court Abuse its Discretion by Not Weighing Evidence?

The defendants argue that the trial court abused its discretion by not resolving factual issues which defendants placed in dispute by filing affidavits and portions of the plaintiffs' depositions. This evidence related to the number of states where the product was sold, difficulties in identifying the product, and variances in the factors contributing to product failure.

The plaintiffs contend the trial court should make the certification decision solely on the basis of the allegations contained in the pleadings. In support of this argument plaintiffs cite *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140 (1974), in which the United States Supreme Court stated: "We find nothing in either the language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." 417 U.S. at 177. Plaintiffs urge us to apply this conclusion broadly and conclude that the trial court must ac-

cept the class allegations as true and not inquire into the merits of the class facts.

This argument has been rejected by federal courts. In *Falcon,* the United States Supreme Court explained that in order to rigorously analyze the Rule 23 prerequisites "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160. While acknowledging that the factual probe must be something short of a determination of the merits of plaintiffs' claim, the federal courts generally recognize that evidence may be used to establish the facts necessary to show whether the prerequisites to class certification are met and the evidence may be submitted at an evidentiary hearing, by affidavits, or through the discovery record. Manual for Complex Litigation (Fourth) § 21.21 (2004) (hereinafter Manual) ("An evidentiary hearing may be necessary in a challenge to the factual basis for a class action."). See, *e.g, Castano v. American Tobacco Co.,* 84 F.3d 734, 744 (5th Cir. 1996); *In re American Medical Systems, Inc.,* 75 F.3d 1069 (6th Cir. 1996); *In re Ford Motor Co. Bronco II Product Liab. Lit.,* 177 F.R.D. 360, 365 (E.D. La. 1997); *Arch v. American Tobacco Co., Inc.,* 175 F.R.D. 469, 487 (E.D. Pa. 1997); *In re Ford Motor Co. Ignition Switch Products,* 174 F.R.D. 332, 339 (D. N.J. 1997). See also Fed. R. Civ. Proc. 23, Advisory Committee Comment, 2003 Amendments ("prevailing practice" before amendment is to have active judicial supervision and controlled discovery "limited to those aspects relevant to making the certification decision on an informed basis"); Conte & Newberg, 3 Newberg on Class Actions §§ 7:6, 7:26 (4th ed. 2002) (if facts are undisputed, determination may be based upon pleadings and arguments; evidence may be submitted to directly dispute class facts or to introduce additional facts which tend to diminish the weight of plaintiff's facts); 59 Am. Jur. 2d, Parties § 100 (trial court must go behind pleadings as it must understand claims, defenses, relevant facts, and applicable substantive law in order to make meaningful certification determination).

Plaintiffs argue against the federal view and suggest that Kansas law does not allow the consideration of evidence on a preliminary, procedural motion.

First, plaintiffs note that K.S.A. 2003 Supp. 60-223(c)(1) requires the trial court to consider class certification "[a]s soon as practicable after the commencement and before the decision on the merits." The same language was used in Fed. R. Civ. Proc. 23 before the rule was amended in 2003 and has been interpreted not to "mandate precipitous action. The court should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues." *Chateau de Ville Productions, Inc. v. Tams-Witmark Music Library, Inc.,* 586 F.2d 962, 966 (2d Cir. 1978) ("the district judge acted precipitously in deciding the class certification motion without fuller development of the facts on the issues concerning fairness and adequacy of representation"). Accord *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1313 (4th Cir. 1978) ("discovery is to be encouraged" on the class issue); *Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir. 1974) ("[t]he parties should be afforded an opportunity to present evidence on the maintainability of class action"). The federal courts generally recognize the trial court's power to issue a case-management order and "guide the parties in presenting the judge with the information necessary to make the certification decision and permit the orderly and efficient development of the case." Manual for Complex Litigation, § 21.11, p. 245.

We find no reason to apply a different analysis to the Kansas statute. The trial court should make the certification decision as soon as practicable after the parties have had an opportunity to develop and present the facts relevant to class certification.

Next, plaintiffs urge us to treat a motion for class certification in a manner akin to a motion under K.S.A. 60-212, restricting the determination to allegations in the pleadings, as compared to K.S.A. 2003 Supp. 60-256, which allows evidence to be considered. The Seventh Circuit Court of Appeals rejected this same argument, noting:

"The reason why judges accept a complaint's factual allegations when ruling on motions to dismiss under Rule 12(b)(6) is that a motion to dismiss tests the legal sufficiency of a pleading. Its *factual* sufficiency will be tested later—by a motion for summary judgment under Rule 56, and if necessary by trial. By contrast, an order certifying a class usually is the district judge's last word on the subject; there

is no later test of the decision's factual premise (and, if the case is settled, there could not be such an examination even if the district judge viewed the certification as provisional). Before deciding whether to allow a case to proceed as a class action, therefore, a judge should make whatever factual and legal inquiries are necessary under Rule 23." *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675-76, *cert. denied* 534 U.S. 951 (7th Cir. 2001).

The *Szabo* court gave an example of one party alleging that the class had 10,000 members, making it too numerous to allow joinder, while the other party insisted that the class contained only 10 members. The court's conclusion, with which we agree, was that "[a] judge would not and could not accept the plaintiff's assertion as conclusive; instead the judge would receive evidence (if only by affidavit) and resolve the disputes before deciding whether to certify the class." 249 F.3d at 676.

In addition, plaintiffs' argument ignores K.S.A. 2003 Supp. 60-243(d), which provides: "When a motion is based on facts not appearing of record the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or depositions." Federal courts have recognized that the comparable federal rule, Fed. R. Civ. Proc. 43(e), serves as the basis for considering evidence on a motion to certify a class in federal court. 3 Newberg § 7:26, p. 82 n.6; 9 Wright and Miller, Federal Practice and Procedure: Civil 2d § 2416 (1995).

Therefore, we reject plaintiffs' arguments and find that a trial court must give careful consideration to and conduct a rigorous analysis of the prerequisites imposed by K.S.A. 2003 Supp. 60-223 and, in doing so, should consider evidence when submitted by the parties and make those factual determinations necessary to a determination of whether the prerequisites for a class action are met.

## *Did the Trial Court Err in Not Considering Choice-of-Law Issues?*

As an alternative argument, plaintiffs suggest that the trial court considered the evidence submitted by the defendants. The plaintiffs point out that, although the trial court did not specifically reference the affidavits or discovery record, the trial court indicated it had considered "Plaintiff's motion and brief for class cer-

tification, Defendants' response brief, Plaintiffs' reply brief, . . . the file and . . . oral argument."

However, as defendants note, the trial court did not resolve those facts which were relevant to class certification and which were disputed. Many of defendants' arguments focus upon one disputed and unresolved fact, the number of states in which class members may reside. In briefs, plaintiffs indicate that members of the class reside in less than a dozen states. In response, the defendants submitted an affidavit which stated that the pipe was "potentially shipped to customers in most of the states of the United States."

The trial court did not resolve this factual issue and did not consider the related legal issues, finding it was premature to determine whether Kansas law would govern the entire class or whether other states' laws might be applicable. Defendants argue that without consideration of the choice-of-law factor there is no basis for the trial court to determine commonality, typicality, predominance, or superiority. For example, defendants question how, without having examined the choice-of-law problem, the trial court could conclude: "There are numerous questions of law that are common to the class, as the jury instructions would be essentially the same for every class member on the issue of liability if this case were tried repeatedly and would be the same on damages."

The defendants' arguments are premised on their view that the court must apply the laws of the various states in which plaintiffs reside, which defendants contend could involve most states. The defendants note that for claims regarding contract issues, in the absence of a contractual provision stating a choice-of-law agreement K.S.A. 2003 Supp. 84-1-105(1), Kansas courts have traditionally applied the rule of *lex loci contractus*. In most instances, this means courts apply the substantive law of the state where the contract was made, although in some instances the courts look to the place of performance. See *Wilkinson v. Shoney's, Inc.*, 269 Kan. 194, 209-13, 4 P.3d 1149 (2000); *Aselco Inc. v. Hartford Ins. Group*, 28 Kan. App. 2d 839, 21 P.3d 1011, *rev. denied* 272 Kan. 1417 (2001). Application of this rule could mean that the laws of the various states in which plaintiffs reside would be applied.

Additionally, the defendants argue that Kansas courts have traditionally applied the rule of *lex loci delicti* to tort claims. Under that rule, courts apply the substantive law of the state where the wrong occurs, meaning the place where the injury was sustained. See *Ling v. Jan's Liquors*, 237 Kan. 629, 634, 703 P.2d 731 (1985) (rejecting "analytical approach" which would allow forum to apply law of jurisdiction most intimately concerned with outcome of litigation).

Defendants argue that class prerequisites cannot be satisfied in nationwide product liability cases where the rule of *lex loci delicti* governs choice-of-law determinations. One example of a mass tort class action filed in a *lex loci delicti* state is *In re Bridgestone/ Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002), *cert. denied* 537 U.S. 1105 (2003). Plaintiffs, who were buyers and lessees of sport utility vehicles (SUV) equipped with tires which had an abnormally high failure rate, sued a tire manufacturer and SUV manufacturer. The federal district court certified two classes, one of Ford Explorer owners and lessees, and one of owners or lessees of particular brands of tires. The district court found that under Indiana's choice-of-law rules, the law of the state where the defendants were headquartered and the products were designed would apply. Thus, the law of Michigan would apply to the first class and the law of Tennessee would apply to the second.

The Seventh Circuit Court of Appeals disagreed, holding that because Indiana is a *lex loci delicti* state, it would apply the law of the place where the harm occurred. The plaintiffs suffered financial losses in the places where they purchased or leased their vehicles or tires; therefore, the laws of the states where the SUV buyers and lessees resided would apply to the breach of warranty and consumer fraud claims that were asserted. 288 F.3d at 1016. Because the plaintiffs' claims would have to be adjudicated under the laws of so many jurisdictions, the court found a single nationwide class action was unmanageable. 288 F.3d at 1018.

Defendants contend that because Kansas, like Indiana, is a *lex loci delicti* state, our choice-of-law rules dictate that the law of the state where each plaintiff resides, that is, where each plaintiff suffered the financial injury of owning a home containing defective

polybutylene pipe, would apply to that plaintiff's claim, and application of this rule would make a class action inappropriate.

As previously noted, the trial court determined it was premature to consider these issues and did not consider whether the law of the states of plaintiffs' residences would apply and, if so, what variances would exist in the laws.

This approach is contrary to this court's prior direction to trial courts considering class certification. In *Shutts Executor v. Phillips Petroleum Co.*, 222 Kan. 527, 567 P.2d 1292 (1977), *cert. denied* 434 U.S. 1068 (1978) (*Shutts I*), a class action filed on behalf of royalty owners under oil and gas leases in a three-state area, we recognized that applying the law of various jurisdictions did not preclude class certification, but cautioned:

"We hasten to add, this opinion should not be read as an invitation to file nationwide class action suits in Kansas and overburden our court system. Concepts of manageability in terms of our Kansas class action statute, the nature of the controversy and the relief sought, the interest of Kansas in having the matter determined, and the class size and complexity will have to be applied. [Citation omitted.] *A court should also give careful consideration, as we have attempted to do, to any possible conflict of law problems. When liability is to be determined according to varying and inconsistent state laws, the common question of law or fact prerequisite of K.S.A. 60-223(a)(2) will not be fulfilled.*" (Emphasis added.) 222 Kan. at 557.

While in *Shutts I*, we addressed the issue of commonality, choice-of-law considerations are important to the predominance and superiority factors as well. As noted by the Fifth Circuit Court of Appeals in reversing the class certification of a national class of smokers who alleged eight state law causes of action, "[I]n a multistate class action, variations in state law may swamp any common issues and defeat predominance. . . . Accordingly, a district court must consider how variations in state law affect predominance and superiority." *Costano*, 84 F.3d at 741. Other cases are in accord. See, *e.g.*, *Spence v. Glock*, 227 F.3d 308 (5th Cir. 2000) (threshold question whether district court conducted proper choice-of-law analysis); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1086 (6th Cir. 1996) (granting mandamus in a multistate products liability action, in part because "[t]he district

judge . . . failed to consider how the law of negligence differs from jurisdiction to jurisdiction"); *Walsh v. Ford Motor Co.*, 807 F.2d 1000 (D.C. Cir. 1986), *cert. denied* 482 U.S. 915 (1987) (district court must consider how variations in state law affect predominance and superiority); see Ryan, *Uncertifiable?: The Current Status of Nationwide State-Law Class Actions*, 54 Baylor L. Rev. 467, 470 (2002); Bough & Bough, *Conflict of Laws and Multi-State Class Actions: How Variations in State Law Affect the Predominance Requirement of Rule 23 (b)(3)*, 68 UMKC L. Rev. 1 (1999).

Plaintiffs present several arguments as to why the trial court could certify a class in this case without analyzing the impact of the choice-of-law issue. First, plaintiffs note that the class certification is subject to modification. While this is true, the provisional nature of class certification does not lessen the movant's burden of establishing that the prerequisites for certification are met. See *Falcon*, 457 U.S. at 160 ("This flexibility enhances the usefulness of the class-action device; actual, not presumed, conformance with Rule 23(a) remains, however, indispensable."). Furthermore, we note that even in those cases cited by plaintiffs for the argument that it is premature to *resolve* choice-of-law issues at the stage of class certification, the courts have given *consideration* to the impact of choice-of-law on the class determination. See, *e.g*, *Lobo Exploration Co. v. Amoco Production Co.*, 991 P.2d 1048, 1054 (Okla. App. 1999).

Additionally, plaintiffs cite to the trial court's reliance on Kansas' long history of certifying class actions. The trial court cited *Shutts I*, 222 Kan. 527 (involving dispute over oil and gas leases in three states); *Shutts v. Phillips Petroleum Co.*, 235 Kan. 195, 679 P.2d 1159 (1984) (*Shutts II*), *aff'd in part, rev'd in part and remanded*, 472 U.S. 797, 86 L. Ed. 2d 628, 105 S. Ct. 2965 (1985) (oil and gas leases in three states); *Shutts v. Phillips Petroleum Co.*, 240 Kan. 764, 768, 732 P.2d 1286 (1987), *cert. denied* 487 U.S. 1223 (1988) (*Shutts III*) (oil and gas leases in three states); *Sternberger v. Marathon Oil Co.*, 257 Kan. 315, 894 P.2d 788 (1995) (oil and gas leases in Kansas, Texas, and Oklahoma raising issues where Oklahoma and Texas law were in accord with Kansas); *Gray v. Amoco Production Company*, 1 Kan. App. 2d 338, 345, 564 P.2d

579 (1977), *aff'd in part, rev'd in part* 223 Kan. 441, 573 P.2d 1080 (1978) (required application of law of Kansas, Texas, and Oklahoma on issue on which Texas and Kansas law agreed but Oklahoma law was not decided). We note that in a case not cited by the trial court, *Wortman v. Sun Oil Co.*, 236 Kan. 266, 268, 690 P.2d 385 (1984), *vacated and remanded on other grounds* 474 U.S. 806 (1985), this court determined that a class requiring application of the laws of six states could proceed.

Nothing in these decisions deviates from the statement in *Shutts I* cautioning a trial court to consider "any possible conflict of law problems" because class prerequisites could be defeated when liability is to be determined according to varying and inconsistent state laws. 222 Kan. at 557.

Furthermore, the Kansas cases cited by the trial court and the plaintiff are factually distinguishable from the case at bar. Each of those cases involved oil and gas leases where the dispute raised relatively few legal issues as compared to the numerous issues raised in this products liability case where plaintiffs' theories of liability include: breach of express and implied contract (plaintiffs as third-party beneficiaries); negligent misrepresentation; strict liability under K.S.A. 60-3301 *et seq.*; strict advertising liability under § 402B of the Restatement (Second) of Torts (1964); deceptive and unconscionable acts under the Kansas Consumer Protection Act; breach of the implied warranty of merchantability and fitness for a particular purpose under the Uniform Commercial Code; res ipsa loquitur and negligence; and equitable theories of quantum meruit and unjust enrichment.

Despite the number of these theories, plaintiffs contend the fundamental theories of law which will be presented to the jury in this case are essentially the same in all states. Plaintiffs claim that the Uniform Commercial Code is followed by virtually every state as is the product liability law established in the Restatement (Second) of Torts § 402A (1964). Plaintiffs also contend consumer protection laws are essentially the same from state to state, citing as an example *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), where the Ninth Circuit Court of Appeals affirmed certification in a class action against a minivan manufacturer. Plaintiffs also cite *In*

*re Telectronics Pacing Systems, Inc.*, 172 F.R.D. 271, 291 (S.D. Ohio 1997) ("all states use the same elements to define a cause of action for negligence").

Plaintiffs' argument regarding the Restatement is belied by the Reporter's Notes to § 402A which show that not every state has adopted the rule contained in that section. Regarding the claims of breach of warranties made under the Uniform Commercial Code, while the nationwide adoption of the uniform code provides this cause of action in virtually all states, it is not applied in the same fashion everywhere, especially concerning whether vertical privity is a prerequisite to recovery. *Osborne v. Subaru of America, Inc.*, 198 Cal. App. 3d 646, 656, 243 Cal. Rptr. 815 (3d Dist. 1988). Regarding the law of negligence, the Seventh Circuit observed:

"The law of negligence, including subsidiary concepts such as duty of care, fore-seeability, and proximate cause, may . . . differ among the states only in nuance, though we think not . . . . But nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts." *Matter of Rhone-Poulenc Rorer Inc.*, 51 F.3d 1293, 1300 (7th Cir. 1995).

Furthermore, there is wide variance in the laws of various states regarding other aspects of products liability theories and various affirmative defenses thereto. *Castano*, 85 F.3d at 743. There is also wide variance in the law regarding damages; especially of note in this case is the division among the states on the question of whether economic losses are recoverable in a products liability action. *Osborne*, 198 Cal. App. 3d at 658.

Our prior cases regarding class actions are also distinguishable because of the potential number of states whose laws may impact this case. None of the Kansas cases cited by the plaintiffs or relied upon by the trial court involved application of the laws of more than six states. In this case the record does not disclose the number of states involved. However, the affidavit presented by defendants indicates that the laws of most of the 50 states might be implicated.

Plaintiffs argue that the number of states potentially involved is not relevant because many states have applied the law of the forum in nationwide products liability cases. Citing the Restatement (Sec-

ond) of Conflicts of Laws (1971) "most significant relationship test" and the numerous class action cases to apply that test, plaintiffs argue that, at most, the laws of Kansas and South Carolina should be applied since these are the only states where the product was manufactured. However, defendants note that this court has yet to decide choice-of-law principles in certain kinds of mass tort cases, including class actions. See Bezek, *Conflict of Laws in Kansas: A Guide to Navigating the Dismal Swamp*, 71 J.K.B.A. 21, 24 (Sept. 2002) ("[C]lass action tort cases pose substantial problems when the class members are from different states. The likely course the Kansas appellate courts would take in such a case is not established.") Bezek's article also points out that in some cases, Kansas courts have opted to apply Kansas law absent a clear showing that another state's law should apply. See *Systems Design v. Kansas City P.O. Employees Cred. Union*, 14 Kan. App. 2d 266, 269, 788 P.2d 878 (1990) (quoting *Shutts II*, 235 Kan. at 221). She characterizes this approach as a *lex fori*, or law of the forum, leaning. Bezek, 71 J.K.B.A. 22.

However, the record before us does not allow determination of these issues. Various factors are relevant to a choice-of-law determination, including the procedural or substantive nature of the question involved, the residence of the parties involved, and the interest of the state in having its law applied. *Sun Oil Co. v. Wortman*, 486 U.S. 717, 100 L. Ed. 2d 743, 108 S. Ct. 2117 (1988). A thorough analysis of these issues was not presented to the lower court. Even under a *lex fori* approach, full faith and credit and due process issues prevent Kansas from constitutionally applying its own substantive law to every claim unless it had " 'a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair.' " *Phillips Petroleum Co. v. Shutts*, 472 U.S. at 818 (1985) (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13, 66 L. Ed. 2d 521, 101 S. Ct. 633 [1981]). These contacts must be significantly greater in number and quality than the contacts necessary to provide a court with jurisdiction over the class members' claims. 472 U.S. at 821-22.

Because these issues were not developed in the record before us and were not analyzed by the trial court, we cannot determine the validity of plaintiffs' argument or determine which state's or states' laws apply in this case.

Plaintiffs suggest that it would be inappropriate for us to remand the case for consideration of the choice-of-law issue because the defendants had the burden to establish that the law of other states would apply, they failed to do so, and have forfeited their right to complain. In support of this argument, plaintiffs cite *Layne Christensen Co. v. Zurich Canada*, 30 Kan. App. 2d 128, 143-44, 38 P.3d 757 (2002), which held: "Generally the party seeking to apply the law of a jurisdiction other than the forum has the burden to present sufficient facts to show that other law should apply. Failure to present facts sufficient to determine where the contract is made may justify a default to forum law." *Layne* was not a class action and, therefore, did not consider the burden of proof issues inherent in the filing and prosecution of a motion to certify a class. However, the *Layne* court cited *Lobo*, 991 P.2d at 1051-52 , which is a class action case in which the Oklahoma Court of Appeals held that the burden fell upon the party who argued that conflicting laws defeated class certification.

Within the context of a motion for class certification, many other courts disagree and have determined that the person seeking the class must meet the burden of establishing that conflicts in applicable laws do not defeat the requirements of commonality, typicality, predominance, and superiority. As one commentator stated: "[I]t is incumbent upon class counsel to prove to the court that the multistate class should proceed. Class counsel must either show that there are no significant differences in the various state laws, or, if there are variations, that they can be managed by the trial court." 4 Newberg on Class Actions § 13:36, p. 436-37. See, *e.g.*, *Walsh v. Ford Motor Co.*, 807 F.2d 1000, 1017 (D.C. Cir. 1986), *cert. denied* 482 U.S. 915 (1987) (quoting *In re School Asbestos Litigation*, 789 F.2d 996, 1010 [3d Cir. 1986]) ("To establish commonality of the applicable law, nationwide class action movants must creditably demonstrate, through an 'extensive analysis' of

state law variances, 'that class certification does not prevent insuperable obstacles.' ").

We find this latter analysis to be more persuasive and conclude that when the determination is whether the prerequisites of K.S.A. 2003 Supp. 60-223 are met, the movant has the burden to show that there are no significant differences in the various states' law or, if there are variations, that they can be managed by the trial court.

Plaintiffs also argue that remand is unnecessary because the trial court recognized that subclasses may need to be created based upon the variations in state law. Plaintiffs assert that any conflict problem can be managed through these subclasses. In one of the first cases to recognize the use of subclasses as a mechanism for dealing with conflict-of-law issues, the Illinois Supreme Court noted that subclasses do not necessarily cure the problems raised when different laws must be applied. The court stated that the predominance of common questions of law or fact depended "upon plaintiff's ability to establish that the differing laws of the States are subject to grouping in a *manageable* number of subclasses." (Emphasis added.) *Miner v. Gillette*, 87 Ill. 2d 7, 17-18, 428 N.E.2d 478 (1981). Consistent with this, other courts require that the movant establish that the disparate issues can be grouped into subclasses and that the resulting number is manageable. *E.g., Osborne*, 198 Cal. App. 3d at 658-59 (defective design product case in which plaintiff did not meet burden of showing that an acceptable number of subclasses could be established given myriad diverse state laws; noting there are limits outside which subclassification system is not sufficiently useful). In this case, plaintiffs have made no showing that subclasses would be feasible or that there would be a manageable number of subclasses.

We conclude, therefore, that the matter should be remanded for consideration of the choice-of-law issue and the impact upon the prerequisites imposed by K.S.A. 2003 Supp. 60-223.

## Other Issues

Defendants argue that the trial court erred in disregarding the factual variances in causation, damages, and other aspects of each

individual claim. Defendants note that even between the two plaintiffs there is variance in the type of plumbing failures experienced; one involved leaks inside the house and the other involved leaks outside the house. Defendants also provided an affidavit from Vanguard Plastics' Director of Quality Assurance stating that the causes of polybutylene plumbing system failures can be multiple and may include improper installation practices, improper maintenance and design of the system, and exposure to excessive chlorination. An affidavit from another Vanguard employee described the difficulty of identifying homes with Mitsui pipe.

It is unclear how the trial court treated these aspects of the affidavits regarding individual questions which might be at issue. We note that the presence of individual questions, while tending to diminish the weight of class facts, does not necessarily defeat a prima facie showing that the class prerequisites are satisfied, 3 Newberg § 7:26, or mean that there has been an abuse of discretion in certifying the class, *Helmly v. Ashland Oil, Inc.*, 1 Kan. App. 2d 532, 536-37, 571 P.2d 345, *rev. denied* 222 Kan. 749 (1977). Therefore, for the trial court to have certified a class in light of these individualized questions is not necessarily error. We also note that if the court did consider the evidence, the defendants' arguments fall within that purview of the trial court's wide discretion in determining if a class should be certified.

However, the weight to be given these facts is also somewhat dependent on the various choice-of-law issues. Therefore, on remand these facts will again need to be analyzed, especially in relation to the superiority and predominance factors.

Finally, for purposes of providing guidance on remand, we consider the defendants' objection to the trial court's consideration of two class actions involving polybutylene pipe which have reached an approved settlement: *Cox v. Shell Oil*, 1995 WL 775363 (Tenn. Ch. 1995), and *Spencer v. Dupont*, Case No., 94-074, Greene County Circuit Court (Ala. 1995). The trial court relied, at least in part, on the fact that *Cox* involved a "virtually identical class" in deciding to certify the class in this case. The court found the only differences between this case and *Cox* were that class members were expected to be from far fewer states than in *Cox* and that the

pipe resin was made by Mitsui rather than Shell. The court found those differences to be insignificant.

Defendants argue that the trial court erred in relying on *Cox* because of several key differences. First, the initial class certification in *Cox* was not contested and ultimately became part of a settlement class. The *Cox* defendants reserved the right to oppose class certification for trial purposes if the settlement was not approved. Defendants note that when a class is certified for settlement purposes only, there will be no discovery and no trial; therefore, many of the legal difficulties of a multistate class action are eliminated, including most choice-of-law questions. Second, the *Cox* plaintiff class was limited to persons who owned polybutylene pipe used in certain applications and with leakage. In this case, the class is not limited to specific applications and does not exclude persons who have not experienced leakage. Plaintiffs dispute these arguments and submit that *Cox* and *Spencer* provide a master plan for the handling of this case, which is considerably smaller and less complex.

On the record before us, we cannot resolve the parties' dispute as to whether the classes in *Cox* and *Spencer* were certified for settlement purposes only. If the classes were certified for settlement only, different conflict of law and manageability issues were presented and the cases may be of little guidance. See *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 138 L. Ed. 2d 689, 117 S. Ct. 2231 (1997) (class certification for settlement only does not raise issues of whether trial will present intractable management problems, but all other specifications of Fed. R. Civ. Proc. 23 are of vital importance because court will not have opportunity to adjust class as proceedings unfold).

However, it is not an abuse of discretion to consider those cases where similar issues were presented as long as that consideration is not a substitute for, but merely a part of, the trial court's careful and rigorous analysis of whether all the prerequisites of K.S.A. 2003 Supp. 60-223 are satisfied.

Reversed and remanded with directions.