**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 3 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

L.J. STAFFORD, a/k/a JAY
STAFFORD,

        Plaintiff-Appellee,

v.

CAROL JANE CRANE, Trustee of the
L.J. Stafford Irrevocable Trust,

        Defendant-Appellant.

No. 03-3067

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 01-CV-2536-KHV)**

---

Submitted on the briefs:

W. Greg Wright, Hill, Beam-Ward, Kruse & Wilson, LLC, Overland Park, Kansas
for Plaintiff-Appellee.

Leonard L. Wagner and Anne W. Schiavone, Husch & Eppenberger, LLC, Kansas
City, Missouri for Defendant-Appellant.

---

Before **KELLY, MCKAY** , and **HENRY** , Circuit Judges.

---

**HENRY** , Circuit Judge.

In September 1999, Plaintiff L.J. Stafford executed a durable power-of-attorney, naming his two sisters his lawful attorneys-in-fact. In April 2000, the sisters used the power-of-attorney to commit Mr. Stafford to a lock-down Alzheimer's unit and to create an irrevocable trust for Mr. Stafford. Defendant Carol Jane Crane, Mr. Stafford's niece, assumed the role of trustee. In September 2000, Mr. Stafford filed a habeas corpus petition, seeking release from the Alzheimer's unit. He was judged mentally competent and released to the care of a nursing home, due to his physical condition.

Mr. Stafford then filed this diversity action against Ms. Crane in the federal district court for the District of Kansas, seeking a declaratory judgment that the trust was void ab initio and seeking the return of all property received by the trust. Before trial, the parties filed a joint motion and stipulation, which was accepted by the district court, declaring the trust null and void as of May 9, 2002. After a bench trial, the district court found for Mr. Stafford, holding that (1) the trust was void ab initio because the durable power-of-attorney did not expressly authorize the attorneys-in-fact to create the trust for Mr. Stafford, and therefore (2) all disbursements which had been made by Ms. Crane as trustee were misappropriations, except to the extent that Mr. Stafford conceded that he himself would have paid the bills for which the disbursements were made. The court ordered Ms. Crane to pay back the challenged disbursements, with interest.

2

In this appeal, Ms. Crane contends that (A) the parties' pre-trial stipulation that the trust was null and void as of May 9, 2002, barred Mr. Stafford's claim at trial that the trust was void ab initio, and (B) Mr. Stafford's attorneys-in-fact had the authority to create the irrevocable trust on his behalf. For substantially the same reasons as the district court, we AFFIRM.

## I. BACKGROUND

Mr. Stafford, aged 92 at the time of trial, is a long-time resident of Keyes, Oklahoma. On September 17, 1999, Mr. Stafford executed a durable power-of-attorney, appointing two of his sisters, Billie Jo Stafford and Juanita Jankowski his lawful attorneys-in-fact. *See* Aplt's App. vol. I, at 30. The power-of-attorney authorized Ms. Stafford and Ms. Jankowski to manage Mr. Stafford's property but did not expressly grant authority to the attorneys-in-fact with respect to the creation, amendment, or revocation of trusts.

Subsequently, on April 6, 2000, Mr. Stafford executed a durable medical power-of-attorney, appointing Billie Jo Stafford as his agent for health care decisions. *See id*. at 33. The following day, Billie Jo Stafford used the durable medical power-of-attorney to involuntarily admit Mr. Stafford to the Morton County Geriatric Hospital and Psychiatric Center in Elkhart, Kansas. On April 20, 2000, she transferred him to a locked-down Alzheimer's unit at the Southeast

3

Colorado Hospital and Long Term Care Center in Springfield, Colorado. That

same day, she executed a document titled "L.J. Stafford Irrevocable Trust"

("Trust").

The Trust purported to be an agreement between Mr. Stafford as settlor and

his niece, Barbara Ann Hinds, as trustee. It provided that

> (a) During the lifetime of the Settlor, the Trustee shall pay or apply so much of the income from the trust estate as well as any amount from the principal of the trust which the Trustee, under his sole discretion, deems necessary for the care, comfort, health and welfare (including living, residential, medical and health, legal and general welfare) of Settlor. . . .
> (b) Within a reasonable time after the death of Settlor, Trustee shall distribute the trust corpus and any accumulated income to the estate of the Settlor outright in fee simple absolute.

*Id*. at 35-36. The Trust included Mr. Stafford's real estate in Cimarron County,

Oklahoma, and Baca County, Colorado, which had an approximate value of

$3,000,000, and certificates of deposit at banks in Kansas and Oklahoma, totaling

nearly $1,000,000.

Billie Jo Stafford executed the Trust in Kansas, and it stated that it shall be

governed and construed under Kansas law. The Trust named Ms. Crane as

successor trustee if Ms. Hinds ceased to serve as trustee. Almost immediately

after she assumed the position of trustee, Ms. Hinds did cease to serve, and Ms.

Crane took over. Ms. Crane acted as trustee until May 9, 2002, when the parties

jointly stipulated that the Trust was null and void. While Ms. Crane was trustee,

4

she made numerous disbursements from the Trust.

Mr. Stafford was in the Alzheimer's unit from April until September 2000. During this time Billie Jo Stafford, another sister, and a brother filed a petition in the Baca County, Colorado District Court, requesting the appointment of Ms. Crane as Mr. Stafford's guardian and conservator. Also during this time, Mr. Stafford filed a habeas corpus petition in the Baca County court against his family and the Southeast Colorado Hospital seeking his release from the locked-down Alzheimer's facility.

The Baca County court consolidated the guardianship petition and the habeas action and appointed an independent psychiatrist to evaluate Mr. Stafford. The psychiatrist found Mr. Stafford to be oriented, intelligent, capable of giving a good history, and not depressed or in need of sedating tranquilizers. On August 8, 2000, based on the psychiatrist's recommendation, the court ordered that Mr. Stafford's medications be gradually reduced and discontinued. On September 12, 2000, the court ordered that Mr. Stafford be released from the Alzheimer's unit and moved to either a nursing home or home health care, because even though he was competent, he had physical infirmities and could not properly care for himself. The court appointed Ms. Crane as temporary guardian, but allowed Mr. Stafford to nominate an acceptable replacement guardian.

On November 8, 2001, Mr. Stafford filed this suit against Ms. Crane in the

5

federal district court for the District of Kansas. He sought a declaration that the Trust was void ab initio. Additionally, he sought the return of his nearly $4,000,000 in property from the Trust and reimbursement for funds appropriated by Ms. Crane.

Prior to trial, the parties filed an agreed order and stipulation, which "declare[d] the 'L.J. Stafford Irrevocable Trust' dated April 20, 2000, null and void" and provided for all assets in the purported irrevocable Trust to be transferred to the new "L.J. Stafford Revocable Trust Agreement." *Id*. at 68-69 (Order Declaring Trust Void, filed May 9, 2002). The order also set forth the following findings of fact and conclusions of law:

> [Mr. Stafford] has denounced the purported L.J. Stafford Irrevocable Trust since its execution. . . [;] [t]here remains an issue as to whether [Ms. Crane] has misappropriated any assets or income of the purported trust during the time period she has served as trustee . . . [;] [and] [t]his Court retains jurisdiction . . . to determine [Mr. Stafford's] damages from misappropriations of the purported trust's assets by [Ms. Crane].

*Id*. at 69.

When the parties appeared for trial, Mr. Stafford's counsel advanced the argument that the Trust was null and void ab initio – *i.e.*, that it was never a valid trust from its execution in April 2000 – making all of the expenditures by Ms. Crane misappropriations. Ms. Crane objected, arguing that this claim was barred because Mr. Stafford's counsel signed the parties' joint stipulation, and the stipulation did not preserve Mr. Stafford's claim that the Trust was void ab initio.

6

The district court disagreed, finding that the stipulated order did not address that claim and that the court had retained jurisdiction to determine the extent of Mr. Stafford's damages from the alleged misappropriation of trust assets.

The district court then concluded that the Trust was void ab initio because the durable power-of-attorney did not specifically authorize the attorneys-in-fact to create a trust on Mr. Stafford's behalf. Accordingly, the district court found that all of Ms. Crane's expenditures as trustee, excepting those that Mr. Stafford conceded he would have made himself, were misappropriations, and the court ordered Ms. Crane to repay them, with interest, to Mr. Stafford.

We hold that (A) the pre-trial stipulation did not settle the dispute over whether the Trust was void ab initio, so the district court did not err in addressing the claim, and (B) the purported Trust was void ab initio because Mr. Stafford's power-of-attorney did not explicitly grant his attorneys-in-fact the authority to create a trust on his behalf. Therefore, we affirm the district court's judgment.

## II. DISCUSSION

A.    **Did the parties' pre-trial stipulation that the Trust was null and void as of May 9, 2002, bar Mr. Stafford's claim at trial that the Trust was void ab initio?**

On appeal, Ms. Crane first argues that "the district court erred in determining the issue of the status of the L.J. Stafford Irrevocable Trust . . . when

7

the parties had by their agreement and through a stipulated order resolved the issue of the status of the Trust prior to trial." Aplt's Br. at 19. She contends that Mr. Stafford abandoned his argument that the Trust was invalid from its inception by stipulating that the Trust was null and void as of May 9, 2002, and by failing to specifically reserve the issue for trial.

### 1. Applicable Law and Standard of Review

We examine the district court's interpretation of the stipulation de novo. *See Scrivner v. Sonat Exploration Co.,* 242 F.3d 1288, 1291 (10th Cir. 2001) (construing settlement agreement de novo); *Liggatt v. Employers Mut. Cas. Co.*, 46 P.3d 1120, 1129 (Kan. 2002) (holding that the interpretation of a contract is a legal question). Generally, "[t]his court is . . . reluctant to relieve parties from the benefits, or detriments of their stipulations." *L.P.S. v. Lamm*, 708 F.2d 537, 539-40 (10th Cir. 1983). The primary rule is to ascertain the intent of the parties. *Homestake-Sapin Partners v. United States*, 375 F.2d 507, 511 (10th Cir. 1967); *Liggatt*, 46 P.3d at 1125. However, a stipulation is not ambiguous merely because the parties disagree as to its interpretation. *Homestake-Sapin Partners*, 375 F.2d at 511; *Marshall v. Kansas Med. Mut. Ins. Co.*, 73 P.3d 120, 130 (Kan. 2003).

### 2. The Parties' Stipulation

We have carefully reviewed the language of the joint stipulation that the parties submitted to the court for approval. Despite the parties' differing views as

8

to the total effect of the agreement to render the Trust null and void as of May 9, 2002, we hold that its terms are clear and unambiguous. With regard to the status of the Trust, the stipulation resolves that

> [t]he parties agree and stipulate that the L.J. Stafford Irrevocable Trust . . . is null and void. The parties agree that all real property, personal property and all other assets of any kind that are under the ownership or control of the purported L.J. Stafford Irrevocable Trust shall be immediately transferred to the L.J. Stafford Revocable Trust Agreement.

Aplt's App. vol. I, at 55 (Joint Motion and Stipulation for Order Declaring Trust Void, Requiring Final Accounting and Retaining Jurisdiction to Adjudicate Damages, filed April 24, 2002). Nowhere does the stipulation or the resulting court order state that the parties have agreed that the Trust was at any time valid or that it was not void ab initio. In the absence of such language, we cannot find that Mr. Stafford waived his right to litigate the issue. A party's waiver of the right to assert a claim must be knowing and voluntary. *See Torrez v. Pub. Serv. Co. of New Mexico, Inc.*, 908 F.2d 687, 689 (10th Cir. 1990); *City of Topeka v. Watertower Place Dev. Group*, 959 P.2d 894, 901 (Kan. 1998) ("Waiver implies that a party voluntarily and intentionally [gave] up a known right or [took] some action inconsistent with the contractual right.").

Moreover, the clear, unambiguous language of the stipulation indicates that although the parties agreed to declare the Trust null and void as of May 9, 2002, the parties did not agree regarding the Trust's prior status. The stipulation

9

consistently refers only to the "purported" Trust, Aplt's App. vol. I, at 54-56, and expressly states that Mr. Stafford "has denounced the purported L.J. Stafford Irrevocable Trust since its execution." *Id*. at 55. Had Mr. Stafford waived his claim that the Trust was void ab initio, this language would be superfluous and contrary to the agreement. Additionally, under the stipulation the district court "retain[ed] jurisdiction . . . to determine [Mr. Stafford's] damages from misappropriations of the purported trust's assets by [Ms. Crane]." *Id*. at 69. We agree with the district court that this jurisdiction "necessarily embrac[ed] the issue whether the trust was void *ab initio*," *id*. at 102 (Mem. Order, filed Dec. 30, 2002), as it encompassed the possibility that the court would find that all of Ms. Crane's disbursements were misappropriations because the Trust was invalid from its inception. From the plain language of the stipulation, the only issue resolved was that the Trust was null and void; nothing in the stipulation or the order speaks to the creation of the Trust or its status previous to the stipulation.

We disagree with Ms. Crane's argument that stipulating that the Trust was null and void as of May 9, 2002, was inconsistent with or preclusive of a claim that the Trust was void ab initio. A determination of the former does not include a determination of the latter. Black's defines "null" as "[h]aving no legal effect; without binding force; VOID," noting that "[t]he phrase null and void is a common redundancy." BLACK'S LAW DICTIONARY 1098 (8th ed. 2004). In

10

contrast, Black's defines "void ab initio" as "[n]ull from the beginning, as from the first moment when a contract is entered into." *Id*. at 1604. The parties' agreement to declare the Trust null and void as of May 9, 2002, merely rendered any purported Trust without legal or binding effect as of that date, thereby ending Ms. Crane's control over Mr. Stafford's property and allowing him to transfer the property into a trust of his own creation. This declaration did not, by its terms, constitute an agreement that the Trust was either valid or invalid from its inception.

Ms. Crane's argument that "a valid settlement agreement is final and conclusive as between the parties for all pre-existing claims directly tied to the settled dispute" is inapposite. *See* Aplt's Br. at 26. The issue of whether the Trust was void ab initio is not a "pre-existing claim" that is "directly tied" to the agreement to render the Trust null and void as of May 9, 2002. *Compare In re Engels*, 692 P.2d 400, 404 (Kan. Ct. App. 1984) (holding that a settlement agreement to withdraw a competing will barred a subsequent attempt to recover attorney's fees incurred in the process of offering the withdrawn will because "the agreement was clearly intended to settle the will contest, and [these attorney] fees . . . were *directly tied* to that contest.") (emphasis added) *and Cent. Kan. Credit Union v. Mut. Guar. Corp.*, 886 F. Supp. 1529, 1538 (D. Kan. 1995) (holding that "a settlement agreement finally determines the amount in dispute and bars a later

11

attempt to litigate that amount"). Ms. Crane asserts that this interpretation of the joint stipulation makes "any benefit to [Ms.] Crane from the settlement . . . illusory at best." Aplt's Br. at 29. However, she overlooks the fact that rendering the purported Trust null and void freed her from her fiduciary duties to Mr. Stafford and put an end-date on his claims for damages resulting from the alleged misappropriations of his funds or property.

Ms. Crane makes much of the fact that Mr. Stafford's attorney "conceded [that] he had drafted a stipulation originally including language stating that the Trust was null and void *ab initio*" and that "[Ms.] Crane's attorney refused to agree the Trust would be declared void *ab initio*, and consequently [Mr.] Stafford's attorney agreed the phrase '*ab initio*' could be taken out." *Id*. at 20. However, these negotiations over the stipulation merely underline the fact that Mr. Stafford has consistently asserted his claim that the Trust was void ab initio. They do not, contrary to Ms. Crane's contentions, establish that Mr. Stafford agreed to abandon this claim. This exchange between the lawyers and the resulting stipulation declaring the Trust null and void and remaining silent on the ab initio issue are consistent with our conclusion that the matter was left open for determination by the court.

Accordingly, we hold that the parties' pre-trial stipulation that the Trust was null and void as of May 9, 2002, did not bar Mr. Stafford's claim at trial that

12

the Trust was void ab initio.  Therefore, the district court did not err in considering the claim.

**B.    Did Mr. Stafford's Attorney-in-Fact Have the Authority to Create an Irrevocable Trust on His Behalf in the Absence of an Express Grant of Authority in the Power-of-Attorney?**

It is undisputed that Mr. Stafford executed a durable power-of-attorney appointing his sister, Billie Jo Stafford, as one of his lawful attorneys-in-fact.  It was in this capacity that Billie Jo Stafford established the Trust on Mr. Stafford's behalf.  The district court strictly construed the power-of-attorney and found that because it did not specifically authorize Billie Jo Stafford to create an irrevocable trust on Mr. Stafford's behalf, the Trust was void ab initio.  Ms. Crane contends that the district court's finding was in error because "the power of attorney gave very broad and explicit power to the attorney-in-fact to act in plaintiff Stafford's stead with respect to all property of the plaintiff and in all financial matters, such that the creation of the Trust was within the power of the attorney-in-fact." *Id*. at 32.  We disagree.

**1.    Applicable Law and Standard of Review**

In order to resolve this issue, we must examine both Oklahoma and Kansas law.  We begin with the choice of law rules of the forum state, *see Vitkus v. Beatrice Co.*, 127 F.3d 936, 941 (10th Cir. 1997), which inform us that the principle of lex loci contractus controls.  *Dragon v. Vanguard Indus.*, 89 P.3d

13

908, 914 (Kan. 2004). "In most instances, this means courts apply the substantive law of the state where the contract was made." *Id.*

Here, Mr. Stafford's power-of-attorney was executed and filed in Oklahoma, and is therefore governed by Oklahoma law. On the other hand, the the Trust was executed in Kansas, and states that it shall be governed by Kansas law. Aplt's App. vol. I, at 40-41. We thus look to the Kansas courts in determining how to interpret that instrument. *Davis v. Miller*, 7 P.3d 1223, 1229 (Kan. 2000) (applying a contract's choice of law provision).

As to both instruments, "[w]hen the facts are undisputed, this Court reviews the district court's interpretation of [them] . . . de novo." *U.S. Fid. and Guar. Co. v. Federated Rural Elec. Ins. Co.*, 286 F.3d 1216, 1218 (10th Cir. 2002); *In re Estate of Somers,* 89 P.3d 898, 902 (Kan. 2004). However, as the district court recognized, "neither Kansas law . . . nor Oklahoma law . . . specifically address [sic] whether an attorney in fact may create an irrevocable trust without express language which grants such authority in the durable power of attorney itself." Aplt's App. vol. I, at 104. Therefore, we must "consider a number of authorities, including analogous decisions by the [state] Supreme Court, the decisions of the lower courts in [the state], the decisions of the federal courts and of other state courts, and the general weight and trend of authority." *Progressive Cas. Ins. Co. v. Engemann*, 268 F.3d 985, 988 (10th Cir. 2001)

14

(internal quotation marks omitted).

## 2.    Powers of the Attorney-In-Fact

In Kansas, one of the elements necessary to the creation of a valid trust is "[a]n explicit declaration and intention to create a trust." *Taliaferro v. Taliaferro*, 921 P.2d 803, 808 (Kan. 1996). In this case, the purported settlor of the Trust, Mr. Stafford, did not create the Trust himself. Rather, his attorney-in-fact, Billie Jo Stafford, executed the purported Trust by signing her name to a trust instrument above a signature line that reads "L.J. Stafford, by Billy [sic] Jo Stafford, his attorney in fact." Aplt's App. vol. I, at 42. Without an explicit declaration of intent by Mr. Stafford to give Billie Jo Stafford the authority to create a trust on his behalf, the element of intent necessary to trust creation is missing. Thus, we must determine whether Mr. Stafford's durable power-of-attorney conferred such authority upon Billie Jo Stafford as his attorney-in-fact.

In Oklahoma,[1]

> [a] durable power of attorney is a power of attorney by which a principal designates another his attorney-in-fact in writing and the writing contains . . . words showing the intent of the principal that the authority conferred shall be exercisable notwithstanding the principal's subsequent disability or incapacity, and, unless it states a time of termination, notwithstanding the lapse of time since the execution of the instrument.

---

[1] Both Oklahoma and Kansas have adopted statutes regarding the power-of-attorney. *See* OKLA. STAT. tit. 58, §§1071-1077; KAN. STAT. ANN. §§ 58-650 to 665.

15

OKLA. STAT. tit. 58 § 1072. The document granting the power-of-attorney may "show . . . the extent and scope of the powers conferred" and "may grant complete or limited authority with respect to the principal's person . . . [or] property." *Id*. § 1072.1 (A)(3), (B).

Under Oklahoma law, "the instrument creating the special [power-of-attorney] agency will be strictly construed." *In re Rolater's Estate*, 542 P.2d 219, 223 (Okla. Ct. App. 1975). Additionally, "[i]n exercising granted powers, the attorney is bound to act for the benefit of his principal avoiding where possible that which is detrimental unless expressly authorized." *Id*.; *Bank IV, Olathe v. Capitol Fed. Sav. & Loan Ass'n*., 828 P.2d 355, 361 (Kan. 1992) ("[A]s a general rule, powers of attorney are to be strictly construed."). The power-of-attorney designating Billie Jo Stafford as Mr. Stafford's attorney-in-fact is broad and grants her authority to perform most actions with regard to Mr. Stafford's property and finances. However, it does not expressly grant her the authority to create, modify, or revoke trusts.

The general weight of authority suggests that the power to create, modify, or revoke a trust is personal and non-delegable to an attorney-in-fact unless expressly granted in the power-of-attorney. *See* Carolyn L. Dessin, *Acting as Agent Under a Financial Durable Power of Attorney: An Unscripted Role*, 75 NEB. L. REV. 574, 582 & n.38 (1996) (observing that "there are a few restrictions

16

on the acts that can be delegated to agents under durable powers of attorney," but

"noting the following powers are frequently non-delegable: . . . funding a trust)

(citing Paul L. Sturgul, *Financial Durable Powers of Attorney*, 41 No. 5 Prac.

Law. 21, 29-30 (July 1995)). Several states have codified this rule.[2] The

---

² *See* CAL. PROB. CODE § 4264 ("A power of attorney may not be construed to grant authority to an attorney-in-fact to perform any of the following acts unless expressly authorized in the power-of-attorney: (a) Create, modify, or revoke a trust."); FLA. STAT. ch. 709.08(7)(b)5 ("[A]n attorney in fact may not . . . [c]reate, amend, modify or revoke any document or other disposition effective at the principal's death or transfer assets to an existing trust created by the principal unless expressly authorized by the power of attorney."); MO. REV. STAT. § 404.710(6) ("Any power of attorney, whether durable or not durable, and whether or not it grants general powers for all subjects and purposes or with respect to express subjects or purposes . . . may grant power of authority to an attorney in fact to carry out any of the following if the actions are expressly authorized in the power of attorney: To execute, amend or revoke any trust agreement[.]"); NEB. REV. STAT. § 30-3854(e) ("A settlor's powers with respect to revocation, amendment, or distribution of trust property may be exercised by an agent under a power of attorney only to the extent expressly authorized by the terms of the trust or the power."); UTAH CODE ANN. § 75-5-503 ("A power of attorney may not be construed to grant authority to an attorney-in-fact or agent to perform any of the following, unless expressly authorized in the power of attorney: (1) create, modify, or revoke an inter vivos revocable trust created by the principal; (2) fund, with the principal's property, a trust not created by the principal or by a person authorized to create a trust on behalf of the principal; (3) make or revoke a gift of the principal's property, in trust or otherwise[.]"); WASH. REV. CODE §11.94.050 ("Although a designated attorney in fact or agent has all powers of absolute ownership of the principal, or the document has language to indicate that the attorney in fact or agent shall have all the powers the principal would have if alive and competent, the attorney in fact . . . shall not have the power, unless specifically provided otherwise in the document: To make, amend, alter, or revoke any of the principal's . . . trust agreements."). *See also* Lisa H. Jamieson, *Marital Property Issues in the Modern Estate Plan*, 49 BAYLOR L. REV. 391, 411 (1997) (suggesting that under the Texas probate code "an agent does not have the power

(continued...)

Uniform Trust Code, promulgated by the National Conference of Commissioners on Uniform State Laws in 2000, takes the same position. *See* UNIF. TRUST CODE § 602(e), *available at* http://www.law.upenn.edu/bll/ulc/uta/2001final.htm ("A settlor's powers with respect to revocation, amendment, or distribution of trust property may be exercised by an agent under a power of attorney only to the extent expressly authorized by the terms of the trust or the power.").

The *Restatement (Third) of Trusts* also supports this narrow construction of the power-of-attorney. Although it states that "[u]nder some circumstances, an agent under a durable power-of-attorney or the legal representative of a property owner who is under disability may create a trust on behalf of the property owner," RESTATEMENT (THIRD) OF TRUSTS §11(5), the commentary to this section indicates that this is only appropriate when the property owner is legally incompetent. *Id.* at cmt. f ("Transfers of property belonging to . . . legally incompetent adults may be made in the course of managing their financial affairs . . . by the agent (attorney in fact) of an incompetent adult appointed and acting under a durable power of attorney executed before the principal's incapacity."). As Mr. Stafford was judged to be competent by the Baca County, Colorado District Court, this provision does not support Ms. Crane's actions.

---

[2](...continued)
to create a trust on behalf of the principal, only the right to fund a trust already created by the principal").

Moreover, several state courts have held that, in the absence of an express grant of authority, an attorney-in-fact does not have the power to create a trust on behalf of her principal. The reasoning of these decisions undermines Ms. Crane's argument here. *See, e.g.*, *In re Trust of Jameison*, 8 P.3d 83, 87 (Mont. 2000) (noting that "[t]he Power of Attorney [did] not specifically grant the authority to create a trust, reflect [the beneficiary's] intent to create a trust, or even mention a trust" and that, as a result, "the Power of Attorney [did] not authorize [the purported trustee] to transfer . . . property to herself as trustee and, as a result, [the trust] was not properly created"); *Kotsch v. Kotsch*, 608 So. 2d 879 (Fla. Dist. Ct. App. 1992) (strictly construing a power of attorney and concluding that although the power of attorney granted authority to a son to manage the father's property during his lifetime, it did not authorize the disposition of the father's property by means of a trust).

Similarly, we find persuasive the reasoning of courts that have addressed the analogous powers of attorneys-in-fact to revoke trusts created by the principal and to make gifts of the principal's property. These courts have also held that an attorney-in-fact must be limited to performing only the powers that are expressly granted in the power-of-attorney. *See In re Guardianship of Lee*, 982 P.2d 539, 541-42 (Okla. Ct. App. 1999) (holding that an attorney-in-fact did not have power to revoke his principal's revocable living trust when the power to revoke had been

19

specifically reserved to the principal in the trust instrument and not specifically granted to the attorney-in-fact in the power-of-attorney); *Muller v. Bank of Am.*, 12 P.3d 899, 904 (Kan. Ct. App. 2000), (holding that "unless the settlor expressly states otherwise in the trust document or the power of attorney, the power to revoke a trust is personal to the settlor and is nondelegable"); *In re Rolater's Estate*, 542 P.2d at 223 (holding that a general power-of-attorney "carries with it no authority to make a gift of the principal's property in the absence of an explicit direction").

In conclusion, we hold that the Kansas and Oklahoma state courts would follow the general weight of authority, strictly construing the power-of-attorney and deeming the power to create trusts non-delegable in the absence of an express grant of authority. Therefore, we hold that because the power-of-attorney designating Billie Jo Stafford as Mr. Stafford's attorney-in-fact did not expressly authorize her to create a trust on his behalf, she lacked the power to do so.

### III. CONCLUSION

We hold that (A) the parties' stipulation that the Trust was null and void did not bar Mr. Stafford's claim at trial that the Trust was void ab initio, and (B) Billie Jo Stafford lacked the authority as attorney-in-fact to create a trust on Mr. Stafford's behalf, making the Trust void ab initio. Accordingly, we AFFIRM the

20

decision of the district court.